

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2002

# Higgins v. Beyer

Precedential or Non-Precedential: Precedential

Docket No. 99-5556

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Higgins v. Beyer" (2002). *2002 Decisions*. Paper 350.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/350

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 12, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5556

VINCENT M. HIGGINS,
        Appellant

v.

HOWARD L. BEYER, DEPARTMENT OF CORRECTIONS;
WILLIAM F. PLANTIER; GRACE ROGERS; JAMES
DOOLEY; THOMAS MORAN; DANIEL BARRAJAS;
LILLYANNE D. YEAGER; LINDA COOK; FRANK BRUNO;
ANSELM JEEVERATNAM; MARGARET C. ZORSKY;
BRENDA GIBB; GWINN GOODE; JOSEPH DOE, (LAST
NAME A FICTITIOUS NAME), IN THEIR INDIVIDUAL
CAPACITY, JOINTLY, SEVERALLY OR IN
THE ALTERNATIVE

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 98-CV-03641)
District Judge: Hon. Garrett E. Brown, Jr.

Argued April 5, 2002

Before: SLOVITER, BARRY, and ALARCON,*
Circuit Judges

(Filed: June 12, 2002)

_____

* Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.


        S. William Livingston, Jr.
        Jennifer E. Schwartz (ARGUED)
        Covington & Burling
        1201 Pennsylvania Avenue, N.W.
        Washington, DC 20004-2401

         Attorneys for Appellant

        John J. Farmer, Jr., Attorney
         General of New Jersey
        Michael J. Hass
        Jeffrey K. Gladden (ARGUED)
        R.J. Hughes Justice Complex
        25 Market Street
        Trenton, New Jersey 08625

         Attorneys for Appellees

OPINION OF THE COURT

ALARCON, Circuit Judge:

Vincent M. Higgins appeals from the dismissal of his federal civil rights claim that Howard L. Beyer, the Assistant Commissioner of the New Jersey Department of Corrections, and 13 employees of the Adult Diagnostic and Treatment Center ("ADTC employees") violated 38 U.S.C. S 5301(a) by seizing money derived from a veteran's disability benefits check from his inmate account to pay a state court-ordered fine, and that he was deprived of his constitutional right to due process because his request for a predeprivation hearing was ignored. He also seeks reversal of the dismissal of his claim, on the ground of mootness, that prison employees retaliated against him for exercising constitutionally protected rights.

We reverse because we conclude that Higgins's pro se complaint, when liberally construed, stated sufficient facts to state a cause of action for a violation of a federal right under S 5301(a), and a deprivation of his Fourteenth Amendment right to notice and hearing prior to the

2

deprivation of his property interest in the proceeds of his veteran's benefits. We also hold that the district court erred in dismissing his claim that the prison officials retaliated against him for asserting his rights under the Due Process Clause.

I

Higgins alleged the following facts in his complaint. Higgins served in the United States Army from 1974 to 1978. While in the Army, Higgins injured his left hand, leaving him partially disabled. This partial disability qualified Higgins to receive disability benefits from the Veteran's Administration ("VA") for the remainder of his life.

In 1992, Higgins pled guilty to the crime of First Degree Aggravated Sexual Assault in the Superior Court of New Jersey. The court sentenced Higgins to a 10-year term of imprisonment to be served at the ADTC in Avenel, New Jersey. The court also imposed a Victims of Crime Compensation Board ("VCCB") fine in the amount of $1,000, pursuant to section 2C:43-31 of the New Jersey Statutes Annotated. N.J. Stat. Ann. S 2C:43-3.1 (West 1995). Section 2C:43-3.1 expressly requires a New Jersey Superior Court to order the Department of Corrections to collect a VCCB fine from the personal account of an inmate if the assessment was not paid at the time of sentencing.1

_____

1. Section 2C:43-3.1 provides in pertinent part:

    In addition to any disposition made pursuant to the provisions of
    N.J.S. 2C:43-2, any person convicted of a crime of violence . . . shall
    be assessed at least $100.00, but not to exceed $10,000.00 for each

such crime for which he was convicted which resulted in the injury or death of another person. . . . When a defendant who is sentenced to incarceration in a State correctional facility has not, at the time of sentencing, paid an assessment for the crime for which he is being sentenced or an assessment imposed for a previous crime, the court shall specifically order the Department of Corrections to collect the assessment during the period of incarceration and to deduct the assessment from . . . any personal account established in the institution for the benefit of the inmate.

N.J. Stat. Ann S 2C:43-3.1(a)(1), (a)(3).

At the time of sentencing, Higgins had not yet received any disability benefits from the VA.

On April 7, 1993, Higgins was transferred from the Monmouth County Correctional Center Facility to the ADTC. On or about April 1, 1998, he received a notification from the VA that his claim for benefits for partial disability had been approved. He was advised that he would receive a check for benefits due from January 1, 1991 to March 31, 1998.

On May 29, 1998, a United States Treasury Department check in the amount of $7,608, made out to Higgins as the payee, arrived at the ADTC. On the same date, Higgins was notified during mail call by an ADTC employee that the check had arrived. He was not handed the check nor did he authorize any prison employee to deposit it in his inmate account. The standard procedure at the ADTC when a check is received is to request the inmate to sign a form acknowledging receipt of the check and then endorse it "For Deposit Only." The ADTC employees did not follow this procedure.

Later that day, Higgins wrote four "business remits," which instructed prison employees to forward money in the amounts of $5,000, $2,000, and two for $200 apiece to various persons. A "business remit" is the term used at the ADTC for an inmate's authorization that money be deducted from his account.

On May 31, 1998, Higgins asked the social worker assigned to his wing to find out what had happened to his check. The social worker informed Higgins that ADTC employees intended to use part of the proceeds of the VA disability benefits check to pay the outstanding VCCB fine ordered by the New Jersey Superior Court. On the same date, Higgins filed a written complaint addressed to ADTC Superintendent William F. Plantier in which Higgins stated that a VA disability benefits check is not attachable pursuant to 38 U.S.C. S 5301.

On June 2, 1998, ADTC Assistant Superintendent Grace Rogers sent a letter to Higgins in which she stated that Higgins's VA disability benefits check had been received and would be deposited in his inmate account. On June 3,

1998, Higgins received written confirmation that his check had been deposited in his inmate account. On June 9, 1998, Linda Cook, an ADTC social worker, notified Higgins that none of the checks that he had authorized would be sent out until he signed a business remit authorizing the withdrawal of $1,000 to pay the VCCB fine. Higgins refused on the ground that a VA disability benefits check is not attachable pursuant to 38 U.S.C. S 5301. He also stated that under the terms of his plea bargain, he was only required to pay an assessment of $30 and that he had filed a habeas corpus petition challenging the imposition of a VCCB fine in the amount of $1,000. Ms. Cook informed Higgins that only a portion of the checks he had authorized would be sent out so that there would be sufficient funds in his inmate account to satisfy the VCCB fine.

On June 10, 1998, Daniel Barrajas, ADTC's Assistant Mail Supervisor, asked Higgins to endorse the VA disability benefits check. Higgins refused. On the same date, Higgins wrote to Superintendent Plantier requesting a written explanation of the disposition of his VA disability benefits check. Higgins also stated that if he did not receive a written explanation by June 12, 1998, he would file an action in the United States District Court. Superintendent Plantier did not reply. Sometime thereafter, ADTC employees deducted $1,000 from Higgins's inmate account to pay the VCCB fine ordered by the New Jersey Superior Court.

II

Higgins filed this S 1983 action on August 4, 1998. Prior to filing an answer, the ADTC employees moved to dismiss the complaint on October 14, 1998, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Higgins had failed to state a claim upon which relief can be granted. Higgins filed his opposition to the Rule 12(b)(6) motion on November 9, 1998.

While the motion to dismiss was pending, Higgins filed a pro se pleading styled as a "NOTICE OF MOTION IN SUPPORT OF AFFIDAVIT/DEPOSITION TO CONSOLIDATE THESE ARGUMENTS WITH THE ABOVE DOCKET CASE

AND/OR ORDER OF PROTECTION/INJUNCTION." In this motion, Higgins alleged that ADTC employees brought false charges against him, resulting in his confinement in administrative segregation for 365 days and the denial of his access to the courts, in retaliation for the filing of this action for damages for the deprivation of his rights pursuant to 38 U.S.C. S 5301(a) and the Due Process Clause of the Fourteenth Amendment.

On June 10, 1999, without the benefit of oral argument, the district court granted the ADTC employees' motion to dismiss this action, for failure to state a claim upon which relief can be granted. In a footnote to its memorandum opinion, the district court stated: "In light of this Court's granting of the motion to dismiss plaintiff 's complaint as to the fourteen individual defendants, the later-filed motion of pro se plaintiff Vincent Higgins for a preliminary injunction shall be denied as moot." The court did not explain how Higgins's discrete claim that ADTC employees retaliated against him for asserting his right to access to the courts was rendered moot by his alleged failure to state a claim for the deprivation of his property in violation ofS 5301(a) and his constitutional right to a predeprivation hearing.

Higgins has timely appealed the district court's final judgment in this S 1983 action. Accordingly, we have jurisdiction over this appeal. 28 U.S.C. S 1291.

III

Higgins contends that the district court erred in ruling that he failed to allege sufficient facts to demonstrate that the ADTC employees violated S 1983. He argues that the complaint alleges sufficient facts to state a claim under S 1983 either for depriving him of money derived from a VA disability benefits check in violation of S 5301(a), or for denying him his constitutional right to a predeprivation hearing to challenge the threat to remove funds derived from his VA disability benefits check from his inmate account.

Our review of the dismissal of an action pursuant to Rule 12(b)(6) is plenary. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.

1996). This Court has described the nature of our review as follows:

> We must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action. Since this is a S 1983 action, the plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution. In considering a Rule 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims. Thus, the district court's order granting the defendants' motion to dismiss will be affirmed only if it appears that the plaintiffs could prove no set of facts that would entitle them to relief.

Id. (citations omitted). Moreover, as Higgins filed his complaint pro se, we must liberally construe his pleadings, and we will "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999).

Section 1983 authorizes a person to file a private cause of action against state actors for a deprivation of rights protected by a federal statute or the United States Constitution. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suite in equity, or other proper proceeding for redress . . . .

7

42 U.S.C. S 1983. It is undisputed that the ADTC employees were state actors who deprived Higgins of funds derived from his VA disability benefits check without his consent under color of a state court order issued pursuant to N.J. Stat. Ann. S 2C:43-3.1(a)(3).

A.

We must first consider whether Higgins alleged sufficient facts to demonstrate a violation of 38 U.S.C. S 5301(a). Section 5301(a) provides in relevant part:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. . . .

38 U.S.C. S 5301(a).

In order to state a claim under S 1983, a plaintiff must allege a "violation of a federal right, and not merely a violation of federal law." Pa. Pharmacists Ass'n v. Houstoun, 283 F.3d 531, 535 (3d Cir. 2002) (en banc) (quotation omitted). This Court recently explained that "a plaintiff alleging a violation of a federal statute may not proceed

under S 1983 unless 1) the statute creates enforceable rights, privileges, or immunities within the meaning of S 1983 and 2) Congress has not foreclosed such enforcement of the statute in the enactment itself." Id. (quotations omitted).

To create a right enforceable under S 1983, the federal statute at issue must meet three conditions:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (citations omitted). Once all three conditions are met, a rebuttable presumption arises that the right is enforceable under S 1983. Id. at 341; Pa. Pharmacists Ass'n, 283 F.3d at 535. "This presumption may be rebutted by showing that Congress expressly or impliedly foreclosed an action under S 1983." Pa. Pharmacists Ass'n, 283 F.3d at 535.

Congress may impliedly foreclose a remedy underS 1983 "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under S 1983." Blessing, 520 U.S. at 341. Section 5301(a) contains neither express language nor a comprehensive enforcement scheme that demonstrates that Congress intended to foreclose a remedy under S 1983 for a violation of S 5301(a). We are persuaded that S 5301(a) provides a federal right that is enforceable under S 1983.

The purpose of the prohibition against the attachment, levy, or seizure of a veteran's disability benefits in S 5301(a) is to "prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." Rose v. Rose, 481 U.S. 619, 630 (1987) (quotation omitted). Even though Higgins, because he is a prisoner, does not presently need or rely upon his disability benefits for subsistence, his right nonetheless to receive those benefits free from attachment, levy, or seizure is expressly set forth in clear, mandatory language in the statute. Section 5301(a) also precludes anyone from using any "legal or equitable process" to attach, levy, or seize these benefits. Thus, S 5301(a) satisfies the conditions set forth in Blessing v. Freestone for creating a federal right enforceable under S 1983.

Our holding that a violation of a veteran's rights under

S 5301(a) is enforceable against state prison officials pursuant to S 1983 is supported by the Ninth Circuit's decision in Nelson v. Heiss, 271 F.3d 891 (9th Cir. 2001). In Nelson, the court held that future veteran's benefits are exempt from a hold placed on an inmate's account where the inmate consented to and the prison officials authorized the hold to cover purchases of medical-record copies and dental appliances when there were insufficient funds to cover the overdrafts. Id. at 893-96. The Ninth Circuit held that the holds placed on the veteran's inmate account by the prison officials violated S 5301(a) because a veteran's benefits are exempt from assignment, attachment, levy, or seizure. Id. In Nelson, the state actors were attempting to recoup funds advanced for the veteran's medical needs. Id. at 893. In rejecting the contention of the state actors that they had a right to the funds after providing overdraft protection, the Ninth Circuit reasoned: "Section 5301(a) was designed to protect veteran's benefits against their creditors so that the veterans themselves could spend those funds as they saw fit when they actually got them, and not before." Id. at 894.

In response to the prison officials' argument that Congress could not have intended to prohibit the taking of a veteran's disability benefits for his or her maintenance and care as allowed by a number of states, the Ninth Circuit observed: "But if Congress wanted to create exceptions to [non-attachment or seizure], it knew how to do so." Id. at 896. In Nelson, the Ninth Circuit applied S 5301(a), notwithstanding the fact that the prisoner had specifically consented to the future payment for the goods and services from his account when he received a VA check that would cover his depleted inmate account. Id. at 895.

In this matter, Higgins did not consent to the taking of money from his inmate account. Instead, he warned the ADTC employees that the use of his disability benefits to satisfy the VCCB fine violated S 5301(a). Thus, the matter before us presents a more compelling factual basis for applying S 5301(a) to protect money derived from Higgins's disability benefits from attachment, levy, or seizure than the circumstances before the Ninth Circuit in Nelson.

10

The Supreme Court has not yet construed S 5301(a) to determine whether prison officials can attach or seize funds in an inmate's account derived from a VA disability benefits check. In Bennett v. Arkansas, 485 U.S. 395 (1988), the Court was called upon to determine whether a State can attach Social Security benefits to help defray the cost of maintaining its prison system. Id. at 396. The State of Arkansas filed an action in state court seeking to attach Bennett's Social Security benefits to defray the cost of maintaining its prison system pursuant to the State Prison Inmate Care and Custody Reimbursement Act, Ark. Stat. Ann. S 46-1701 et seq. (Supp. 1985). Id. The Arkansas statute expressly authorized the seizure of federal Social Security benefits for this purpose. Id. at 396 n.1.

In his opposition to the State's action, Bennett argued that the Arkansas statute violated the Supremacy Clause because it was in conflict with 42 U.S.C. S 407(a), which exempts Social Security benefits "from legal process." Id. at 397. Section 407(a) provides in relevant part that"none of the moneys paid or payable . . . under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C.S 407(a). The state trial court entered judgment in favor of the State and directed that a portion of Bennett's Social Security benefits be seized. 485 U.S. at 397. The Supreme Court of Arkansas affirmed, holding that there was no conflict between the Arkansas statute and 42 U.S.C. S 407(a) because " 'the [Social Security Act] contain[s] an implied exception to the exemption from legal process when the State provides for the care and maintenance of a beneficiary of social security . . . funds.' " Id. at 397 (quoting Bennett v. State, 716 S.W.2d 755, 756 (Ark. 1986)).

The Court granted Bennett's petition for certiorari and reversed the judgment of the Supreme Court of Arkansas. Id. at 397-98. The Court reasoned as follows:

> We think--contrary to the conclusion of the Supreme Court of Arkansas--that there is a clear inconsistency between the Arkansas statute and 42 U.S.C. S 407(a) (1982 ed., Supp. III). Section 407(a) unambiguously rules out any attempt to attach Social Security benefits. The Arkansas statute just as unambiguously

11

> allows the State to attach those benefits. As we see it, this amounts to a "conflict" under the Supremacy Clause--a conflict that the State cannot win.

Id. at 397.

We recognize that the language used by Congress in protecting Social Security benefits in S 407(a) is not precisely the same as the words it employed in S 5301(a) regarding the attachment or seizure of a veteran's disability benefits. We agree with the Ninth Circuit, however, that "its reach is essentially the same." Nelson, 271 F.3d at 895.

We next turn to the question whether the New Jersey statutes are preempted under the Supremacy Clause because they are inconsistent with S 5301(a). The ADTC employees argue that the doctrine of preemption is not applicable on several grounds. They first maintain that there is no conflict between N.J. Stat. Ann. S 2C:43-3.1 and S 5301(a). They assert that S 5301(a) is inapplicable because the VCCB is not Higgins's creditor and the deduction from his inmate account was not accomplished by an attachment, levy, or seizure under legal or equitable process. We disagree. This contention ignores the unambiguous intent of the New Jersey legislature in enacting the Criminal Injuries Compensation Act of 1971

("CICA"). See N.J. Stat. Ann. S 52:4B-1 et seq. (West 2001). The CICA created the Violent Crimes Compensation Board. Id. S 52:4B-3.2 Under the provisions of the CICA, the VCCB may order the payment of compensation for personal injuries suffered by the victim of an aggravated sexual assault. Id. SS 52:4B-2; 52:4B-11(b)(9).

Section 2C:43-3.1 provides for the collection of funds for the VCCB through court-ordered fines assessed against persons convicted of a crime of violence which resulted in the injury of another person. The imposition of the VCCB assessment is mandatory. Id. S 2C:43-3.1(a)(1). As noted above, if the assessment is not paid at the time of sentencing, the court must order the Department of

---

2. The name of the Violent Crimes Compensation Board was changed in 1995 to the Victims of Crime Compensation Board. N.J. Stat. Ann. S 52:4B-3.1.

Corrections to collect the assessment during the period of incarceration by deducting funds from the defendant's inmate account. Id. S 2C:43-3.1(a)(3). Under such circumstances, employees of the Department of Corrections are required to forward the amount collected to the VCCB. Id.

The ADTC employees rely on the Fifth Circuit's decision in Department of Health & Rehabilitative Services v. Davis, 616 F.2d 828 (5th Cir. 1980), in support of their proposition that the VCCB is not a creditor within the meaning of S 5301(a). Their reliance on Davis is misplaced. In Davis, the Florida Department of Health and Rehabilitative Services filed an action seeking an order granting it reimbursement of $12,000 for the care and maintenance of an incompetent in the Florida State Hospital. Id. at 829. During the years that the incompetent was hospitalized, his guardian accumulated $40,000 in Social Security and veteran's benefits. Id. His guardian refused to reimburse the Florida Department of Health and Rehabilitative Services on the basis that the moneys received from federal Social Security and veteran's benefits statutes were exempt from a creditor's claims. Id. The district court denied relief. Id. The Fifth Circuit reversed. Id. It concluded that since the purpose of each federal statute was to provide for the care and maintenance of its beneficiaries, it was consistent with that goal to reimburse a state agency that provided for an incompetent person's care and maintenance. Id. at 831-32.

In the matter sub judice, the intent of the New Jersey Legislature in enacting the CICA was not aimed at providing for the care and maintenance of persons convicted of violent crimes. The CICA's purpose is to compensate victims of violent crimes for their injuries. Moreover, subsequent to Davis, the Supreme Court rejected, in the context of Social Security benefits, the very

argument the state made in Davis. Bennett, 485 U.S. at 397-98. As we have explained, the Supreme Court interpreted the language of 42 U.S.C. S 407(a) as barring Arkansas from retaining an inmate's Social Security benefits, regardless of its purpose in doing so. The very similar mandatory and all-inclusive language ofS 5301(a) requires the same conclusion here.

13

A creditor is a person or entity to whom a debt is owed. Black's Law Dictionary 375 (7th ed. 1999). A debtor is a person who owes an obligation to another. Id. at 411. Pursuant to the CICA, a court must order a person convicted of a violent crime to pay an assessment to the VCCB. N.J. Stat. Ann. S 2C:43-3.1(a)(1). The judgment is enforceable by requiring employees of the New Jersey Department of Corrections to seize the amount owing to the VCCB from the inmate's account. Id. S 2C:43-3.1(a)(3). Thus, contrary to the position of the ADTC employees, the VCCB is a creditor within the meaning of S 5301(a). The CICA has created a creditor-debtor relationship between a person convicted of the crime of aggravated sexual assault and the VCCB that is enforceable by a court order.

The ADTC employees also maintain that the deduction of funds derived from Higgins's VA disability benefits check did not violate S 5301(a) because it was not effected by attachment, levy, seizure by or under any legal or equitable process. As discussed above, the CICA requires a New Jersey court to "specifically order the Department of Corrections to collect the assessment during the period of incarceration and to deduct the assessment . . . from any personal account established in the institution for the benefit of the inmate." N.J. Stat. Ann. S 2C:43-3.1. The term "levy" is defined as the seizure of property to satisfy a judgment. Black's Law Dictionary, supra, at 919. We are persuaded that the collection of funds from Higgins's inmate account by the ADTC employees was clearly a levy or a seizure required by New Jersey law.

The ADTC employees further assert that N.J. Stat. Ann. S 2C:43-3.1(a)(3) does not conflict with S 5301(a) because New Jersey law "mandates the care, government and maintenance of inmates by the Commissioner of the Department of Corrections, thereby fulfilling the Congressional intent of 38 U.S.C. S 5301(a)." Appellees Br. at 19-20. The Supreme Court rejected a similar argument in Bennett. There, the Court noted thatS 407(a) of the Social Security Act does not contain "an 'implied exception' that would allow attachment of otherwise exempted federal payments simply because the State has provided the recipient with 'care and maintenance.' " 485 U.S. at 397.

14

Likewise, S 5301(a) does not contain an implied exception which would allow the collection of funds derived from a VA

disability benefits check to compensate his or her crime victim merely because New Jersey law requires the Department of Corrections to provide for an inmate's care and maintenance.

As noted previously, Congress's purpose in enacting S 5301(a) was to "prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." Rose, 481 U.S. at 630. Section 2C:43-3.1(a)(3) expressly allows the deduction of any funds located in an inmate's personal account. To the extent this statute allows the deduction of funds derived from a VA disability benefits check, its provisions conflict with S 5301(a). "A state law is in conflict, and void under the supremacy clause, if it stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." Finberg v. Sullivan, 634 F.2d 50, 63 (3d Cir. 1980) (en banc) (quotation omitted). To the extent N.J. Stat. Ann. S 2C:43-3.1(a)(3) authorizes prison officials to deduct funds derived from a prisoner's VA disability benefits check, it conflicts with the purpose and objectives of Congress in enacting S 5301(a) and is void under the Supremacy Clause.

B.

Higgins also challenges the dismissal of his claim that the ADTC employees took his VA benefits without notice or a hearing, in violation of his procedural due process rights under the Fourteenth Amendment. The Fourteenth Amendment prohibits the States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, S 1. This Court has previously held that "[i]nmates have a property interest in funds held in prison accounts. Thus, inmates are entitled to due process with respect to any deprivation of this money." Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997) (citations omitted). The Supreme Court has explained the requirements of the Due Process Clause as follows:

> In situations where the State feasibly can provide a predeprivation hearing before taking property, it

15

> generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process.

Zinermon v. Burch, 494 U.S. 113, 132 (1990) (citations omitted).

Higgins alleged in his complaint that the ADTC employees took money from his inmate account without

providing him with a predeprivation hearing. The ADTC employees argue that they did not improperly deny Higgins a predeprivation hearing because the New Jersey Torts Claims Act provides Higgins with an adequate postdeprivation remedy to seek money damages for the seizure of his property. Higgins did not allege facts that demonstrate that his funds were seized as the result of a random, negligent, or unauthorized act of an ADTC employee. Rather, Higgins alleged that the ADTC employees were acting under the authority of an established state procedure for seizing a prisoner's funds to satisfy court-ordered fines. The ADTC employees have argued before this Court that they were acting pursuant to N.J. Stat. Ann. S 2C:43-3.1(a)(3) when they deducted funds from Higgins's account. Thus, under Zinermon, Higgins was entitled to notice and hearing before the ADTC employees deducted money from his account.

Higgins has alleged sufficient facts to establish that he was entitled to a predeprivation notice and hearing. 3

_____

3. We note that the alleged violation of Higgins's Fourteenth Amendment right to due process occurred at the moment he was deprived of his property interest without notice and a predeprivation hearing (i.e., when the ADTC employees seized the money in his inmate account). Thus, Higgins's procedural due process claim would not be rendered moot even if he is ultimately successful in recovering the $1,000 under his S 5301(a) claim. In such a situation, Higgins would still be entitled to nominal damages on a successful procedural due process claim despite the fact that he may be unable to prove actual  injury from the

Moreover, Higgins's procedural due process rights are enforceable under S 1983. See Zinermon, 494 U.S. at 125 ("A S 1983 action may be brought for a violation of procedural due process . . . ."). The district court erred in dismissing Higgins's procedural due process claim under Rule 12(b)(6).

IV

The district court did not disclose the basis for the dismissal of Higgins's claim that the ADTC employees retaliated against him because he exercised his federal constitutional right to seek access to the courts for an adjudication of his claims that he was deprived of his rights under S 5301(a) and the Due Process Clause. A person may state an independent cause of action for retaliation for the exercise of his or her right of access to the courts, regardless of whether the allegations of a deprivation of federal statutory or constitutional rights are meritorious. See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."). The district court erred in dismissing Higgins's claim for retaliation for the exercise of his rights under federal law.

Conclusion

Higgins's complaint alleged sufficient facts to support a
S 1983 claim that he was deprived of his rights under
S 5301(a) and the Due Process Clause of the Fourteenth
Amendment. Accordingly, we VACATE the dismissal of this
action. Upon REMAND, the district court is directed to

_____

deprivation of his property interest in the $1,000. See Carey v. Piphus,
435 U.S. 247, 266 (1978) (stating that "[b]ecause the right to procedural
due process is 'absolute' in the sense that it does not depend upon the
merits of a claimant's substantive assertions, and because of the
importance to organized society that procedural due process be
observed, we believe that the denial of procedural due process should be
actionable for nominal damages without proof of actual injury" (citations
omitted)).

17

permit Higgins to amend his complaint so as to attempt to
allege a S 1983 retaliation claim for the exercise of his
federal rights.

Costs are awarded to Higgins.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

18