*834 OPINION OF THE COURT
McKEE, Circuit Judge.
Domingo Colon Montañez and Timothy-Hale appeal the Rule 12(b)(6) dismissals of both of the civil rights actions they filed under 42 U.S.C. § 1983. Both defendants allege that withdrawal of money from their inmate accounts pursuant to 42 Pa. Cons. Stat. Ann. § 9728(b)(5) (“Act 84”) and Pennsylvania Department of Corrections (“DOC”) policy DC-ADM-005, that was promulgated pursuant to Act 84, violated their procedural due process right to notice and a predeprivation hearing as required by the Fourteenth Amendment of the United States Constitution. For the reasons that follow, we will vacate the decisions of the district courts and remand for further proceedings.
I.
We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review of a district court’s dismissal for failure to state a claim. See WorldCom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir.2003). In reviewing the claims, we accept all well-pleaded factual allegations as true and draw all reasonable inferences from such allegations in favor of the complainant. See Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir.2001). Dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only if it “appears to a certainty that no relief could be granted under any set of facts which could be proved.” D.P. Enterprises, Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir.1984).
II.
Because we write primarily for the parties who are familiar with the procedural and historical background of these cases, we need not recite the facts of these disputes except insofar as may be helpful to our discussion.
Act 84 amended two Pennsylvania statutes: 42 Pa.C.S. §§ 9728(b) and 8127(a). The latter exempts wages, salaries, and commissions from attachment while in the possession of employers. However, § 9278(b) allows attachment in certain situations to recover court fines, costs, and restitution pursuant to court order. This dispute arose when the DOC attempted to collect restitution and fines by deducting monies from the inmate accounts of Mon-tañez and Hale pursuant to DC-ADM-005.
Hale and Montañez maintain that they are entitled to notice and a hearing before the DOC deducts funds from their respective inmate accounts. The money in those accounts typically consists of funds received from friends and family, as well as income earned while incarcerated. Appel-lees, DOC Secretary Jeffrey Beard and other DOC officials (“Corrections Officials”),[1] argue that current DOC policy affords inmates adequate procedural due process, as inmates are informed of any fines, costs, and restitution when sentence is imposed.
We previously addressed the claims being raised here in a nonprecedential opinion — Hale v. Beard, 168 Fed.Appx. 532 (3d Cir.2006). There, we stated that “absent extraordinary circumstances, we have usu *835 ally found that due process requires prede-privation notice and a hearing.” See id. at 534 (internal quotation marks omitted). Therefore, the availability of post deprivation state court proceedings for recovery of funds does not prevent Appellants from seeking to enforce due process rights in an action under § 1983. Id. at 534 (citing Zinermon v. Burch, 494 U.S. 113, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)) (“In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdepri-vation tort remedy to compensate for the taking”)
In deciding the prior appeal, we noted that we were without the benefit of argument from the Commonwealth because the district court dismissed the complaint for failure to state a claim before it was served. We therefore vacated the dismissal of Hale’s claim and remanded for further proceedings. In doing so, we deferred the constitutional question of what constitutes sufficient procedural due process under the Fourteenth Amendment in the context of Act 84 and DOC policy. We also noted the Pennsylvania Supreme Court’s ruling in Buck v. Beard, 583 Pa. 431, 879 A.2d 157 (Pa.2005). There, the Court held that since Act 84 was enacted before the defendant was sentenced, and since the defendant received notice of the obligation to pay fines, costs, and restitution at sentencing, defendants in Hale’s position received all the procedural due process required prior to experiencing the deprivation of having funds withdrawn from their inmate accounts. Although the Court’s reasoning in Buck informs our analysis here, it is not dispositive.[2]
In authorizing the DOC to deduct funds from inmate accounts, Act 84 states:
The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation____ The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.
42 Pa.C.S. § 9728(b)(5).
We have held that the deprivation at issue here occurs at the moment that funds are actually deducted from an inmate account. See Higgins v. Beyer, 293 F.3d 683, 694 (3d Cir.2002). In Higgins, a state inmate brought a § 1983 action against prison officials and employees alleging that they had violated his federal statutory and due process rights by taking money from his veteran’s disability check to pay a court-ordered fine. There, as here, prison officials acted pursuant to a state statute that allowed them to collect funds directly from Higgins’s inmate account while he was incarcerated. See id., 293 F.3d at 692. We allowed the procedural due process claim to proceed, explaining that “the alleged violation of Higgins’s Fourteenth Amendment right to due process occurred at the moment he was deprived of his property interest without notice and a predeprivation hearing (i.e. when the [state employees] seized -the money in his inmate aceount[.])” Id. at 694 n. 3. Thus, a general statement of financial obligations and notice of the state’s ability to debit an unspecified amount from an inmate account does not *836 settle the legal question of whether violations of due process occurred, as it is not certain that Hale and Montañez were necessarily afforded sufficient notice or opportunity to respond.
Here, the district courts found the claims of Hale and Montañez foreclosed solely on the basis of the sentencing court’s broad explanation of what was to follow. Each court held that because inmates are clearly on notice of the provisions of Act 84, and they are allowed to present evidence of their inability to pay any costs, penalties, and restitution at the time they are sentenced, they have been afforded all the notice and opportunity to respond that the Fourteenth Amendment requires. However, given the limited information before us and the pronouncements in Higgins, we can not determine if current DOC policies, the existence of Act 84, and the sentencing hearings afforded Hale and Montañez their due process rights.
Although it is certainly possible that a sentence could be imposed in a manner that is sufficiently flexible and informative to satisfy a defendant’s due process rights regarding any future debits from his/her inmate account, we are unable to conclude that the notice provided to either Hale or Montañez was constitutionally adequate. In the excerpt provided us from Monta-nez’s sentencing hearing, the sentencing court does not mention deduction of funds by DOC during subsequent incarceration. Instead, the court merely ordered that the defendant “shall be subject to such conditions governing parole, including a plan for payment of costs and fines and restitution, as established by the Pennsylvania Board of Parole.” App. at 156. That statement appears to conflict with the immediate action taken by DOC pursuant to DC-ADM-005, to collect restitution from inmates during incarceration.
Additionally, in documents supporting the complaint, DOC officials have submitted what appears to be a form letter that is routinely sent to sentencing courts after sentence is imposed. The substance of that letter is set forth below, and it suggests that sentencing courts routinely file a second order after the sentence is imposed and that the subsequent sentencing order is the one that actually triggers DOC’s deductions from inmate accounts.[3] See App. at 169.
Given that this arrives before us as an appeal of a 12(b)(6) dismissal, we, of course, are limited to the allegations of the complaint. We can not, for example, determine whether inmates receive a copy of the court’s subsequent order directing DOC to deduct funds from inmate accounts, nor can we determine if existing grievance procedures afford inmates sufficient opportunity to respond to the order before DOC begins withholding funds from inmate accounts. However, if DOC policy ensures that both administrative actions take place prior to deducting any monies from inmate accounts, then current DOC procedure may be adequate to address the defendants’ Fourteenth Amendment concerns.[4]
*837 Our understanding of DOC policy is further obscured by documents submitted from the SCI-Fayette facility. The inmate account records there include a detailed listing of Montañez’s financial transactions from April 2004 to October 2004, with each Act 84 deduction clearly marked. See App. at 141-50. That information appears to support his claim that deductions are taken without notice or an opportunity to respond because it does not appear that he was ever informed of the specific amounts that were to be deducted or given an opportunity to contest his ability to pay. Thus, we can not determine if changes in inmate account balances are communicated to inmates, and if so, how or when the inmate is informed of the change. The documentation provided does not allow us to determine if an inmate can meaningfully contest the contemplated account withdrawals in a grievance procedure before they occur or how errors in transactions are resolved. We also can not determine if an inmate receives adequate notice of DOC policy generally and of DC-ADM-005 specifically when the inmate arrives at the correctional facility.[5] Accordingly, we believe that the questions raised can only be resolved if this record is supplemented.
Absent this basic knowledge of current administrative procedures, we are limited in our efforts to assess the adequacy of procedural due process under Act 84. It is therefore necessary to allow this matter to proceed in accordance with the guidance provided above so that these questions, and any other issues pertinent to our inquiry that may arise, can be clarified.
III.
For all of the above reasons, we will vacate the district courts’ dismissals of the procedural due process claims of Hale and Montañez and remand for further proceedings consistent with this opinion. The complaints of both appellants allege sufficient facts to support a § 1983 claim that each was deprived of his rights under the Due Process Clause of the Fourteenth Amendment. Accordingly, we will also vacate the district court’s dismissal of Mon-tañez’s second claim of collateral estoppel. The district court can determine whether it wants to consolidate that collateral es-toppel claim with the procedural due process claims asserted here.

. Secretary Beard is the only named defendant in the first of Montañez's cases. The named defendants in Hale’s suit are Beard and the following DOC employees of SCI-Rockview: F.J. Tennis, Superintendent; Francis M. Dougherty, Business Manager; Earl E. Walker and Raymond Cingel, members of the Inmate Accounting Department; and DOC, along with its Inmate Accounting Department in its entirety. Montañez's second claim involved a different state correctional facility, the named defendants in that suit are Beard and the following SCI-Fayelte employees: Michael Oppman, Business Manager; Dian Detwiler, Inmate Account Supervisor; and Harry E. Wilson, Superintendent.

. While Buck primarily discusses due process rights as affected by the state Constitution and state statutes, the Pennsylvania Supreme Court has held that its due process guarantees are identical to those protected by the United States Constitution. See R. v. Commonwealth, Dep't of Public Welfare, 535 Pa. 440, 461-62, 636 A.2d 142, 152-53 (Pa.1994). Hence, their reasoning extends to the state and federal due process claims brought by Hale.

. The body of the letter reads as follows:
Dear Judge_:
I am writing to obtain clarification of your sentencing order of (date) relating to the above Department of Corrections’ inmate. Your order indicates that you would like collection of fines, costs, penalties, and restitution to commence at the time of parole or upon release. With the passage of Act 84 of 1998, the Department has the ability to collect that money immediately. I have attached a copy of Department’s policy DCADM-005, "Collection of Inmate Debts” which explains how the Department fulfills its obligations under Act 84.
If you would like the Department to begin collecting immediately, please send a certified order to that effect to the records office at SCI_App. at 169.

. Procedural due process concerns invoke the balancing test of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) *837 weighing: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used and the value of additional or substitute procedural safeguards; and 3) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See id. at 335, 96 S.Ct. 893. The state of the record does not allow us to properly assess these factors, but other jurisdictions have found providing an informal, non-adversarial review of written objections to the proposed withdrawal of the inmate's funds would be neither burdensome nor impractical. See e.g., Walters v. Grossheim, 525 N.W.2d 830, 833 (Iowa 1994).

. The method of communicating the policy clearly has Fourteenth Amendment implications as we think it fair to assume that some inmates are either illiterate, or can not read at a level that may be required to understand the DOC’s written policies. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (noting that one of the procedural protections afforded to a prisoner facing a deprivation of a liberty interest in certain prison disciplinary hearings is “assistance from a representative, if the charged inmate is illiterate or if complex issues are involved”); see also 28 C.F.R. § 542.16(b) (requiring that prison wardens ensure that assistance is available for inmates who are illiterate, disabled, or not functionally literate in English when preparing an administrative request or appeal).