**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1547
_____

WILLIAM HENRY KENNEDY,
                                        Appellant

v.

AMERICAN AIRLINES INC.; JOHN DOE 1-10;
ENVOY AIRLINES INC; JANE DOE 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-15-cv-08058)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 23, 2018
Before:  CHAGARES, BIBAS, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 4, 2019)
_____

OPINION[*]
_____

PER CURIAM

    William Kennedy appeals from the District Court's orders (1) denying his motion

to amend his third amended complaint and (2) granting Envoy Airlines Inc.'s (Appellee)

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

motion to dismiss the third amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Also pending before us is a motion to expand the record on appeal. For the reasons that follow, we will affirm the District Court's decision and deny the motion to expand the record on appeal.

The following facts are gleaned from Kennedy's third amended complaint. Dkt. #25.[1] On March 3, 2014, Kennedy was employed as a flight attendant for Appellee. He was scheduled to fly out of Pittsburgh in the early morning, but arrived late to the airport due to his alarm not going off and a scheduled wake-up call not occurring. Kennedy described himself as "quite a sight as he rushed" through the airport "unshaven, unwashed[,] and with his hair disheveled, with his hypertension setting in, coming in from the outside on one of the coldest days of the year."

Kennedy was stopped by TSA agents and questioned about his appearance. The agents ultimately released him to the custody of Terry Fritz, a Breath Alcohol Technician (and an agent of Appellee). Fritz performed a breathalyzer test at 9:19 a.m., which reported a blood alcohol concentration (BAC) of .135. Fifteen minutes later, the test was performed again, which reported a BAC of .083.

Kennedy characterizes these test results as "false positives."[2] He contends Fritz

---

[1] We note the docket sheet refers to entry #25 as the "second" amended complaint, and the caption on the document itself states it is the "second" amended complaint. However, as noted by the District Court, this is actually the third amended complaint due to the procedural posture of the filings. Accordingly, we will refer to it as such.

[2] He references a finding by an administrative law judge, on behalf of the Unemployment Insurance Appeal Board of New York, who found the accuracy of these tests were questionable and were not sufficient to disqualify Kennedy from receiving

and Appellee "either knew or should have know[n] the results of the tests . . . were false positives" because Appellee has "administered thousands of tests and is aware of the uniform and constant rate at which alcohol is metabolized." At 9:35 a.m., Fritz declared in writing that Kennedy had impermissibly consumed alcohol in a breakroom for gate agents, and terminated his employment.

After his termination, Kennedy was contacted by Ellyn Kravette (an agent of Appellee), who gave him two options: either he could remain terminated, or he could enter a "rehabilitation facility" which would allow for the possibility of reinstatement. Kennedy claims he was coerced into entering the rehab program, which he alleges "tr[ied] to force him to admit to having an 'alcohol problem.'" Due to "his medical issues," Kennedy was released early and was not offered an alternative program. Kravette issued a DOT non-compliance letter on April 26, 2014, and Kennedy was permanently terminated from employment with Appellee.

Kennedy subsequently applied for unemployment benefits in New York. His application was initially denied, but, after an administrative appeal, Judge Alison Ferrara reversed the Department of Labor's determination, as she was not convinced Kennedy reported to work intoxicated. She based her reversal on two things: (1) the testimony of the technician who administered the breathalyzer, who stated Kennedy did not smell of alcohol and there was "nothing much" by way of symptoms of intoxication, and (2) the questionable accuracy of the test itself. Judge Ferrara noted that the machine registered

_____

unemployment benefits. Kennedy attached the findings of the judge as an exhibit to his complaint.

3

two "excessive sensor noise" readings and also registered a higher than .000 reading during an "air blank test" which indicated there could be alcohol in the air. She also noted that testimony from Appellee's own witness, a physician, acknowledged that the drop from a .135 reading to a .083 reading in fifteen minutes was a "bigger spread than is normally seen." After Judge Ferrara's decision, Kennedy was able to collect some unemployment benefits.

Kennedy filed a complaint and amended complaint in the Superior Court of New Jersey; the case was removed to the District Court. Dkt. #1. After a second amended complaint was filed, Appellee moved to dismiss pursuant to Rule 12(b)(6). Dkt. #12. On July 20, 2016, the District Court granted Appellee's motion, dismissing some claims with prejudice and others without prejudice. Dkt. #24. The District Court explained that Kennedy was permitted to file a third amended complaint within thirty days, in which he could re-assert claims for which he could allege the necessary facts to support the elements for those claims. Dkt. #23-24.

Kennedy filed a third amended complaint, alleging a single count of fraud and seeking both monetary and equitable relief. Dkt. #25. Appellee again moved to dismiss this third amended complaint pursuant to Rule 12(b)(6). Dkt. #28. Kennedy sought to amend his third amended complaint and add a cause of action for negligence. Dkt. #29. The case was stayed, pending resolution of Kennedy's grievance process with his former union, but ultimately the stay was dissolved and the case was restored to active status on August 21, 2017. Dkt. #36-41. Kennedy subsequently filed (1) a motion for reconsideration of the District Court's July 20, 2016 order and (2) a motion to add parties

4

to the third amended complaint. Dkt. #43-44. The District Court denied all of Kennedy's motions and granted Appellee's motion to dismiss. Kennedy timely appealed.

Initially, we note the District Court made decisions on four motions before it; however, in his opening brief to this Court, Kennedy makes substantive arguments regarding only Appellee's motion to dismiss. Consequently, Kennedy effectively waived any issue with the District Court's denial of his motion to amend, his motion for reconsideration, and his motion to add a party. See F.D.I.C. v. Deglau, 207 F.3d 153, 169 (3d Cir. 2000) (finding an issue not raised in opening brief on appeal was waived and would not be addressed). Accordingly, to the extent Kennedy makes passing references in his opening brief regarding the waived motions—and some arguments in his reply brief—we need not address them.[3] See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court." (internal quotations omitted)).

The District Court had diversity jurisdiction in this matter under 28 U.S.C. § 1332 and we have jurisdiction to hear this appeal pursuant to 28 U.S.C. §1291. We review the District Court's grant of the motion to dismiss pursuant to Rule 12(b)(6) de novo.

---

[3] Although we construe pro se filings liberally, this policy has not prevented us from applying the waiver doctrine to pro se appeals. See, e.g., Emerson v. Thiel Coll., 296 F.3d 184, 190 n.5 (3d Cir. 2002) (per curiam); Gambino v. Morris, 134 F.3d 156, 161 n.10 (3d Cir. 1998); see also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se litigants "must abide by the same rules that apply to all other litigants").

Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff. Id. Furthermore, when dealing with a pro se complaint, we must liberally construe the pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotations omitted). "We may affirm a district court for any reason supported by the record." Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

Kennedy alleges in the operative third amended complaint that Appellee engaged in fraud, and he seeks both legal and equitable relief. In New Jersey, depending on the remedy sought, an action for fraud may be either legal or equitable. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993) (citing Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981)). To show legal fraud under New Jersey law, "a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). For equitable fraud, the elements are the same, save for the "scienter" requirements. Lightning Lube, Inc., 4 F.3d at 1182–83. In other words, to show equitable fraud, there is no requirement that the alleged defrauding party

6

intended or knew that the misrepresentation was false.  Id.; see also Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006).

Allegations of fraud, whether legal or equitable, are subject to the heightened pleading requirements of Rule 9.  See Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .").  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico, 507 F.3d at 200.  However, malice, intent, knowledge, or other conditions of a person's mind may be alleged generally.  Fed. R. Civ. P. 9(b).

First, we analyze whether Kennedy sufficiently pleads legal fraud.  We do not believe he has.  Much of Kennedy's opening brief argues over the accuracy of the BAC tests, whether he was intoxicated, and Judge Ferrara's determinations on these issues for the Unemployment Insurance Appeal Board.  We stress, however, that for purposes of our Rule 12(b)(6) analysis, we accept as true Kennedy's allegations that (1) the results of the BAC tests were inaccurate and (2) he was not intoxicated when he arrived to work that morning.

However, even accepting the truth of these allegations, Kennedy still does not sufficiently plead legal fraud.  The District Court held Kennedy did not allege any particularized facts which demonstrate Appellee *knew* the tests were inaccurate.  The District Court concluded that Kennedy's statements—that Appellee "either knew or should have know[n] the results of the tests . . . were false positives" because Appellee has "administered thousands of tests and is aware of the uniform and constant rate at

7

which alcohol is metabolized"—were insufficient to establish knowledge of falsity because they were "generalized and conclusory statements." Indeed, we have held general statements—that a party "should have known" the falsity of a representation—are insufficient to satisfy the scienter requirement. See, e.g., In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 282 (3d Cir. 2006) ("A pleading of scienter sufficient to satisfy Rule 9(b) may not rest on a bare inference that a defendant 'must have had' knowledge of the facts or 'must have known' of the fraud given his or her position in the company. As we have stated, generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company." (internal quotations omitted)); GSC Partners CDO Fund v. Washington, 368 F.3d 228, 239 (3d Cir. 2004) (noting "it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false").

However, we conclude that this is a closer question than the District Court's opinion postulates. Here, while Kennedy does generally assert Appellee "should have known" of the falsity, he also offers several reasons *why* Appellee should have known. In addition to his assertion that Appellee has "administered thousands of tests and is aware of the uniform and constant rate at which alcohol is metabolized," he also references Judge Ferrara's findings on the matter in an exhibit to his complaint, which we detail in the margin.[4] These facts, perhaps, lend themselves to a reasonable inference that

---

[4] Judge Ferrara detailed the testimony of Fritz, who stated Kennedy did not smell of alcohol and there was "nothing much" by way of symptoms of intoxication, and testimony from Appellee's own witness, a physician, who acknowledged that the drop from a .135 reading to a .083 reading in fifteen minutes was a "bigger spread than is

8

Appellee knew, or should have known, the results from the breathalyzer were inaccurate—at least for purposes of surviving a Rule 12(b)(6) motion.  See Fed. R. Civ. P. 9(b) (allowing for "knowledge" or other conditions of the mind to be alleged *generally*); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting, to survive dismissal under 12(b)(6), a complaint must state a claim to relief that is *plausible* on its face, and that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

However, we need not make a definitive determination on that question, because Kennedy has failed to show a *reasonable* reliance on any misrepresentations made by Appellee.  In this regard, Kennedy alleges he was coerced to enter the alcohol rehab program at significant out-of-pocket cost.  But as noted above, we assume Kennedy was not intoxicated when he arrived to work that morning.  Thus, Kennedy simply cannot allege that he relied on Appellee's false representations or acquiesced to their demands when, according to Kennedy himself, he was not intoxicated, and he therefore knew any representation to the contrary to be false.  See Jacked Up, L.L.C. v. Sara Lee Corp., 854 F.3d 797, 811 (5th Cir. 2017) (noting a party cannot *reasonably rely* on a representation if that party knows the representation to be false); see also Restatement (Second) of Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation is not *justified* in relying

_____

normally seen."  She further detailed the problems with the testing machine itself, noting it registered two "excessive sensor noise" readings and also registered a higher than .000 reading during an "air blank test."  Consequently, Judge Ferrara's findings arguably present more particularized facts which support Kennedy's assertions.

upon its truth *if he knows that it is false* or its falsity is obvious to him." (emphasis added)).  Consequently, since reasonable reliance is an element of both legal and equitable fraud, Kennedy fails to plead either in a sufficient manner to survive Appellee's motion to dismiss.  Accordingly, we will affirm the District Court's decision on this matter.[5]

Finally, Kennedy has filed a motion to expand the record on appeal to include some emails and correspondence—the subject of which further discuss the potential inaccuracies of the BAC testing machine.  Because it is our function as an appellate court to review the decision below based on the record before the District Court, we allow a party to supplement the record on appeal only in "exceptional circumstances."  Burton v. Teleflex Inc., 707 F.3d 417, 435 (3d Cir. 2013).  "In determining whether exceptional circumstances exist, the court may consider: (1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3)

---

[5]  In his brief before us, Kennedy makes the argument that he also reasonably relied on Appellee's representation that he could be reinstated if he entered into the rehab program. It appears that Kennedy is essentially alleging a second count of fraud, to wit: Appellee fraudulently represented to Kennedy that he could get his job back if he completed rehab. The District Court did not address this in its order, and rightfully so: Kennedy did not plead these were misrepresentations.  Accordingly, the argument is not before us. See Fassett v. Delta Kappa Epsilon (New York), 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.").  In any event, as Appellee argues, it appears that such a fraud allegation would fail, as the statement that he could get his job back if he completed rehab does not appear to be false.

whether the appeal arose in the context of a habeas corpus action." <u>Id.</u> at 435–36. Furthermore, Federal Rule of Appellate Procedure 10(e)(2) permits supplementation of the record on appeal where a material item has been "omitted." <u>See</u> Fed. R. App. P. 10(e). In our opinion, these materials add little to the record for our purposes. Indeed, as noted above, for purposes of the appeal, we have accepted Kennedy's contention that the BAC tests were inaccurate. The information Kennedy seeks to admit before us only furthers this contention, and does not cure the problems in his pleadings. Thus, we deny Kennedy's motion to expand the record.

For all of the foregoing reasons, we will affirm the judgment of the District Court.