552 A.2d 750

Reggie Mays, Appellant *v.* Thomas Fulcomer, Superintendent of the State Correctional Institution of Huntingdon and Commonwealth of Pennsylvania, Department of Corrections, Appellees.

Argued November 1, 1988, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Charles A. Bierbach,* for appellant.

*Jerome T. Foerster,* Deputy Attorney General, with him, *Gregory R. Neuhauser,* Senior Deputy Attorney General, *John G. Knorr, III,* Chief Deputy Attorney General, and *LeRoy S. Zimmerman,* for appellees.

OPINION BY SENIOR JUDGE BARBIERI, January 11, 1989:

Reggie Mays appeals an order of the Huntingdon County Court of Common Pleas dismissing an action which he brought against the Pennsylvania Department of Corrections (Department) and Thomas Fulcomer, Superintendent of the State Correctional Institution of Huntingdon (SCIH).

Mays has been an inmate at SCIH since August of 1984. Prior to that date, he was incarcerated at the State Correctional Institution at Graterford (SCI-Graterford). While there, he was an officer of the SCI-Graterford Jaycees. A report of an investigation by Harold Wilson, a member of SCI-Graterford's internal security, revealed that Mays along with two other inmates who were officers in the SCI-Graterford Jaycees, misappropriated at least $4,026.92 from the Jaycees' account while they held elected office in the organization. The full report of this investigation by Harold Wilson resulted in a prison misconduct report being filed against Mays on August 13, 1984, and a misconduct hearing held at SCIH on August 15, 1984. The misconduct report named the two individuals who along with Mays had allegedly misappropriated the Jaycee funds and the amount alleged to have been stolen. The report further stated that these inmates accomplished the theft by mailing Jaycee checks to a nonexistent company. These checks were then alleged to have been cashed by the wife of one of the inmates and another person who claimed they gave the money to a third party. Mays received a copy of the misconduct report prior to the

hearing but was not provided with a copy of Wilson's full investigatory report.

Only the misconduct hearing committee chairman and Mays were present at the misconduct hearing. The evidence against Mays consisted of the misconduct report. Mays denied the allegations contained therein but offered no further evidence on his behalf. The hearing committee chairman found Mays guilty of the misconduct and sentenced him to "disciplinary custody—close for a period of ninety days"[1] and restitution in the amount of $1,006.73. Half of May's hourly prison stipend of $.20 per hour was applied to the restitution.

Mays filed an action pursuant to 42 U.S.C. §1983,[2] claiming his federal civil rights were violated by the procedure employed at the misconduct hearing and seeking an order directing Appellees to stop deducting the $.10 from his hourly prison "wages" to pay the restitution. Mays also requested an award of attorneys' fees pursuant to 42 U.S.C. §1988. Appellees preliminarily objected to the Complaint claiming it did not state a cause of action. The trial court dismissed the Complaint, holding that: (1) the amount paid to prisoners does not constitute a wage exempt from Section 8127 of the Judicial Code (Code), 42 Pa. C. S. §8127;[3] (2) Mays'

---

[1] *See* Hearing Committee Action, Exhibit B to Complaint.

[2] Mays initially filed a *habeas corpus* petition with the trial court. He filed a motion to amend which was granted and subsequently filed the Complaint alleging a §1983 cause of action.

[3] This Section provides as follows:

§8127 *Personal earnings exempt from process:*

The wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding:

(1) For support.

(2) For board for four weeks or less.

(3) Under the act of August 7, 1963 (P.L. 549, No. 290), referred to as the Pennsylvania Higher Education Assistance Agency Act.

due process rights were not violated; (3) the Department was not a person as required for §1983 cause of action; and (4) the Complaint failed to state a cause of action against Fulcomer because it did not specifically aver that Fulcomer was responsible for the policies of which Mays complained.

Mays maintains that the Appellees are illegally "garnishing" his "wages". On appeal, he contends that the money he receives from the Department constitutes a wage within the meaning of Section 8127 of the Code and therefore it is exempt from garnishment to satisfy the restitution order. Mays further maintains that his due process rights were violated because he was not provided with the full report of the investigation by Harold Wilson of SCI-Graterford and therefore he was not afforded a meaningful opportunity to call any witnesses or present documentary evidence in his defense. Although not addressing the trial court's holding that the Complaint fails to specifically allege that Fulcomer was the individual responsible for implementing policy concerning misconduct hearings, Mays contends that as Fulcomer is the superintendent of SCIH it is to be presumed at the initial pleading stage that he is responsible for such policy.

The full panoply of constitutional rights due a defendant in a criminal prosecution, such as the right to be represented by an attorney, *Baxter v. Palmigiano*, 425 U.S. 308 (1976), or the right to confront witnesses, *Wolff v. McDonnell*, 418 U.S. 539 (1974), does not apply to a prison disciplinary proceeding.

In *Wolff*, the United States Supreme Court held that state prisoners have a liberty interest in accumulated good time credits and that such credits could not be revoked for serious misconduct without providing the prisoners with minimum requirements of due process. We agree with the parties that the minimum require-

ments set forth in *Wolff* are applicable to the prison misconduct hearing in the case at hand. In that case, the Supreme Court announced that the following rights must be given to an inmate at a prison disciplinary hearing: (1) he must receive written notice of the charges against him no less than twenty-four hours before the hearing; (2) he must receive a written statement of the evidence upon which the fact finder relied and the reasons for the discipline; (3) he must have the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not jeopardize institutional safety and correctional goals; and (4) in certain cases he must receive the aid of a fellow inmate or member of the prison staff during the hearing itself.[4]

Mays argues that since he was not permitted to see the Wilson report he was denied his right to call witnesses and to present evidence in his behalf. We disagree.

Although Mays was not provided with a copy of the full investigatory report, the misconduct report[5] notified him of the charge against him, the names of the other inmates alleged to have been involved in the scheme, the amount alleged to have been stolen and the way in which the theft was alleged to have been accomplished. The report also informed Mays of his right to call willing and relevant witnesses on his behalf as long .

---

[4] The Department's regulation at 37 Pa. Code §9310(b) provides for written notice of charges, an impartial hearing, opportunity for the inmate to present evidence in his behalf, assistance from an inmate or staff member, a written statement of the decision containing the reasoning of the hearing body, based on the preponderance of the evidence, and an opportunity to appeal from the decision.

[5] Exhibit A to the Complaint.

as they would not create a security hazard.[6] The misconduct report. provided Mays with sufficient information from which he could prepare a defense and therefore his right to call witnesses and present evidence in his behalf was not violated.

We now turn to Mays' argument that his prison "wages". may not be withheld in light of Section 8127 of the Code. We hold that the remuneration which Mays receives for prison labor does not constitute wages for purposes of Section 8127 of the Code and such provision does not apply to Appellees' actions in this case.

With three noted exceptions, Section 8127 exempts from attachment or execution the wages, salaries and commissions of individuals while in the hands of the employer. This provision contemplates formal garnishment proceedings instituted under the Pennsylvania Rules of Civil Procedure and does not apply to SCIH's decision to withhold a portion of the stipend Mays receives while in prison and applying this to satisfy the restitution order.[7]

In *Harris v. Yeager*, 291 F. Supp. 1015 (D.N.J. 1968) *aff'd per curiam,* 410 F.2d 1376 (3rd Cir. 1969), the United States District Court for the District of New Jersey granted a motion for summary judgment filed in response to a complaint by an inmate of the New Jersey State Prison. The inmate claimed the prison's policy of

---

[6] The misconduct report also informed Mays of his right to be represented by another inmate or a staff member.

[7] Although the Legislature has specifically provided that salaries or wages of inmates confined in pre-released centers who are "gainfully employed" under a "release plan" are not "subject to garnishment or attachment for any purpose" while in the hands of the employer or the Bureau of Corrections, Section 4 of the Act of July 16, 1968, P.L. 351, *as amended,* 61 P.S. §1054, it notably has failed to do so for inmates who work within correctional institutions.

withholding a certain percentage from an inmate's monthly earnings until the sum of $10.00 had been accumulated and depositing the funds in the inmate's account until his release was a violation of his civil rights. There, the Court held that the inmate had no legal right to these funds as the remuneration did not constitute wages "in a realistic economic employer-employee relationship." *Id.* at 1017. Instead, they were determined to be a gratuitous payment authorized by the state as a rehabilitative tool. *See also Alexander v. Sara, Inc.,* 721 F.2d 149 (5th Cir. 1983), holding that inmates of a state penitentiary performing work for a private profit making entity on prison grounds were not covered by the Fair Labor Standards Act of 1938, 29 U.S.C. §§201-219, in part because there was no employer/employee relationship as inmate labor belongs to the prison.

We adopt the reasoning of the court in *Harris* and hold that Section 8127 of the Code does not prohibit the Commonwealth from withholding a portion of an inmate's compensation to satisfy a restitution penalty imposed as a result of a prison disciplinary hearing.[8]

Although the term "wages" is not defined in Section 8127, the remuneration which Mays receives would not constitute wages as defined by other statutes such as The Minimum Wage Act of 1968 (Act)[9] and the Unemployment Compensation Law (Law).[10] Obviously, the

---

[8] Even were we to find that §8127 applied to this situation, it has been held that this particular provision does not apply to the Commonwealth. *United States v. Chiolo,* 560 F. Supp. 279 (M.D.Pa. 1983), *citing United States v. Miller,* 229 F.2d 839 (3rd. Cir. 1956).

[9] Act of January 17, 1968, P.L. 11, *as amended,* 43 P.S. §§333.101-333.115.

[10] Act of December 5, 1936, Second Ex. Sess., (1937) 2897, *as amended,* 43 P.S. §§751-914.

relatively insignificant amount of remuneration which an inmate of a state institution receives for working within the prison does not constitute "wages" as contemplated by Section 3(d) of the Act.[11] Further, Section 4(x) of the Law[12] provides that wages include all remuneration ... paid by an employer to an individual as a result of his *employment* ...." (Emphasis added.) Section 4(1) (4) (8) (f) of the Law[13] excludes services performed by an inmate of a penal institution from the definition of employment.

Clearly, Section 8127 is not applicable to Mays' situation. In light of the above reasoning, we conclude Mays has not stated a cause of action pursuant to 42 U.S.C. §1983 and affirm the order of the trial court dismissing his Complaint.

## ORDER

AND NOW, this 11th day of January 1989, the order of the Huntingdon County Court of Common Pleas dated February 17, 1988, is affirmed.

---

[11] 43 P.S. §333.103(d).
[12] 43 P.S. §753(x).
[13] 41 P.S. §753 (1) (4) (8) (f).