Ernest F. WALTERS, Appellee,

v.

Paul GROSSHEIM and John Thalacker, Appellants.

No. 93–1433.

Supreme Court of Iowa.

Dec. 21, 1994.

Bonnie J. Campbell, Atty. Gen., and Suzie Berregaard Thomas, Asst. Atty. Gen., for appellants.

Ernest F. Walters, pro se.

Considered by HARRIS, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This case concerns an Iowa Department of Corrections' policy that authorizes an automatic deduction for restitution from funds credited to an inmate's account from relatives or other "outside sources." Ernest Walters, a prison inmate, challenged the policy as violative of procedural due process. The district court agreed, concluding that Walters was entitled to a hearing before funds other than prison wages were applied toward his restitution plan. We affirm as modified.

The facts are not disputed. Walters is serving a life sentence in the custody of the Iowa Department of Corrections (IDOC).[1] At the time of these proceedings he was employed in the prison laundry earning approximately forty-two dollars per month. Pursuant to a plan of restitution endorsed by Walters upon his incarceration, twenty percent of his institutional wage is credited toward a victim restitution order of $11,579.31.

The controversy before us stems from a March 1992 amendment to IDOC restitution collection procedures. The revised rules call for a deduction from "all sources of monies credited to an [inmate's] account" equal to the deduction that formerly applied only to institutional wages. In Walters' case the new rule resulted in a twenty percent deduction from cash gifts regularly received from his father. These gifts, the record reveals, have been used by Walters to purchase not only sundries but law books. The law-related materials are used by Walters in pursuit of his avocation as a jailhouse lawyer, an endeavor he regards as an important feature of his rehabilitation.

Walters filed a petition for declaratory judgment and injunctive relief in the district court. He claimed that the new IDOC policy systematically deprives him of protected property without the opportunity to be heard, thereby violating his right to due process. The IDOC resisted, contending the policy is authorized by statutes and administrative regulations governing restitution plans. Both parties moved for summary judgment.

Following hearing, the district court ruled that Walters holds a constitutionally protected property right in his prison trust account, whether the accumulated funds are derived from gratuitous prison wages or outside sources. Because only those funds generated by prison work are specifically governed by statutory safeguards, the court reasoned that deductions from other funds could not be made without first giving Walters an opportunity to be heard on his claim of protected property and liberty interests. The court further ruled that because the deprivation was systematic and not prompted by exigent circumstances, only a predeprivation hearing could satisfy procedural due process requirements. It ordered the return of approximately $300 already deducted from Walters' account pursuant to the new rule, and enjoined the IDOC from any further deductions without first giving Walters the opportunity to be heard. This appeal by the IDOC followed.

■ I. The IDOC seems not to quarrel with the notion that an inmate's money in prison accounts is protected property under the Constitution. Indeed the law in that regard appears well-settled. *See, e.g., Longmire v. Guste,* 921 F.2d 620, 623–24 (5th Cir.1991); *Gillihan v. Shillinger,* 872 F.2d 935, 938–40 (10th Cir.1989); *Quick v. Jones,* 754 F.2d 1521, 1523 (9th Cir.1985); *Artway v. Scheidemantel,* 671 F.Supp. 330, 337 (D.N.J.1987); *Ruley v. Nevada Bd. of Prison Comm'rs,* 628 F.Supp. 108, 112 (D.Nev.1986). Nor does the IDOC contest the idea that,

---

**1.** Named defendant Paul Grossheim, now deceased, was the former director of the Iowa Department of Corrections. Defendant John Thalacker is the warden at the Iowa Men's Refor-

matory, Walters' place of incarceration at the time this proceeding was begun. For simplicity we will refer to IDOC as the defendant throughout this opinion.

given this protected property interest, an inmate cannot be deprived of these funds without due process. *See Gillihan*, 872 F.2d at 939.

What the IDOC claims on appeal is that Iowa Code chapter 910 (1993) provides all the due process protections constitutionally required under the facts of this case. It asserts that the court erroneously expanded Walters' due process protections by unnecessarily distinguishing between the existing assessment of prison wages and the new assessment of funds from "outside sources." It claims moreover that the only constitutional issue implicated in a restitution case is the inmate's ability to pay. Because we believe the IDOC's argument confuses Walters' statutory obligation to make restitution with the State's corollary obligation to furnish due process in the collection of it, we find the argument unpersuasive.

It is clear that Iowa Code section 910.2 not only authorizes but compels the district court to order victim restitution in all criminal cases. *State v. Harrison*, 351 N.W.2d 526, 527–28 (Iowa 1984). Tempering this duty, however, is the court's obligation to consider an inmate's reasonable ability to pay, a factor that serves as a constitutional prerequisite to enforceability of the order. Iowa Code § 910.2; *State v. Van Hoff*, 415 N.W.2d 647, 648 (Iowa 1987). By statute, incarceration creates no obstacle to performance under the restitution plan. *See* Iowa Code § 910.5(1) ("An offender committed to a penal or correctional facility of the state, shall make restitution while placed in that facility."). Nevertheless the restitution plan of payment is required to reflect individualized factors bearing on the inmate's ability to pay. *See id.* (citing income, physical and mental health, education, employment and family circumstances).

Two statutory provisions enhance this restitution collection scheme. First, Iowa Code section 904.702 specifically authorizes deductions from prison wages (known as "gratuitous allowances"). Second, whether incarcerated or not, a defendant liable for restitution is generally subject to the same collection methods available to other creditors. *See* Iowa Code § 910.7A(1), (2) (restitution

order "constitutes a judgment and lien" for all sums outstanding under the order, enforceable by the State "in the same manner as a civil judgment"). However, the Code nowhere authorizes the sort of blanket post-restitution-plan deduction from non-wage assets sought here by the IDOC.

IDOC apparently believes that administrative rules promulgated in accordance with Iowa Code section 910.5(5) authorize its unilateral action. Specifically IDOC points to 201 Iowa Administrative Code 20.11(10) which provides "[r]estitution will only be deducted from a credit to an inmate's account from an outside source by written authorization from the inmate, approval from the warden/superintendent, or by court order." Like the district court, however, we do not believe this provision permits the warden to dispense with the constitutionally mandated requirement of individualized restitution planning based on each inmate's unique circumstances. *See, e.g.*, 201 Iowa Admin.Code 20.11(2) (reiterating statutory dictate that restitution plan "shall consider the present circumstances of an inmate's physical/mental health and other legal financial obligations").

■ We hold that a departmental or institutional policy that purports to take an inmate's private resources cannot be implemented without first granting the inmate an opportunity to protect his or her interest from unreasonable deprivation. It may well be that in most instances the government's interest in promoting prompt satisfaction of restitution obligations will outweigh an inmate's alleged interest in applying the funds towards some other end. But that determination cannot be made unilaterally by the institution, as was done here, consistent with due process. The district court was correct in so ruling.

■ II. Having determined that Walters is entitled to be heard on his objections to the summary deprivation of his property, the question remains whether—as IDOC contends—a post-deprivation hearing is good enough to satisfy due process. The district court did not think so, and neither do we.

The Supreme Court has held that where a deprivation stems from established state pro-

cedure, as opposed to circumstances requiring quick or emergency action, a post-deprivation hearing would be constitutionally inadequate. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265, 278 (1982). Courts have routinely ruled that situations involving nothing more urgent than inmate account withdrawals would rarely justify emergency treatment, thereby applying *Logan* to require a predeprivation hearing. *See, e.g., Gillihan,* 872 F.2d at 939–40; *Quick,* 754 F.2d at 1524; *Jones v. Clark,* 607 F.Supp. 251, 256 (E.D.Pa. 1984); *State v. O'Connor,* 171 Ariz. 19, 23–24, 827 P.2d 480, 484–85 (1992). The IDOC cites no persuasive authority to the contrary.

We hasten to add that the predeprivation "hearing" to which Walters is entitled need not be more than an informal, nonadversarial review of his written objections to the proposed withdrawal of funds. *See Hewitt v. Helms,* 459 U.S. 460, 476, 103 S.Ct. 864, 873, 74 L.Ed.2d 675, 691 (1983). Although the district court suggested the need for a "hearing" before each withdrawal, we reject that idea as unduly burdensome and impractical in the prison setting. To comport with due process, prison officials must merely (1) notify prisoners of the proposed amendment to their restitution plans including—where appropriate—assessments against "outside sources," (2) permit time for objection to the proposed amendment, and (3) consider the objections in formulating an individualized plan for the future. With that modification, we affirm the judgment of the district court.

**AFFIRMED AS MODIFIED.**

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

I respectfully dissent. The prisoner is already accorded a statutory hearing superior to the additional one now required by the majority.

I. Existing safeguards seem adequate. Even those not incarcerated are not entitled to a predispositional hearing where there is no "likelihood of serious loss and where the procedures ... are sufficiently reliable to minimize the risk of erroneous determinations." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30, 45 (1978). *See also Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (hearing not required before administering corporal punishment to student); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (hearing not required before writ to sequester debtor's property).

II. That Walters owes $11,579.31 in restitution is a given, the obligation and the amount having been fixed following a formal court proceeding. The reformatory adopted its plan to collect twenty percent of money from all sources (rather from merely amounts received through institutional payroll). The policy change was adopted by the institution's rules committee on posted notice to the prisoners.

Under Iowa Code section 910.7 (1993) any affected prisoner can petition the district court for a hearing on any restitution plan. The majority seems to think the statutory right· to hearing is post-deprivation, rather than predeprivation, and strikes it for that reason. The prisoners however have a clear right to make it predeprivation; the statute states that it is available at any time.

Even if we assume it fails as a predeprivation hearing and is post-deprivation, it is adequate. This is because due process is not violated by deprivation of a prisoner's property if a meaningful post-deprivation remedy is available. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393, 407–08 (1984). *See* annot. 66 A.L.R.4th 791, 841 (1988); 72 C.J.S. *Prisoners* § 75, at 485–86 (1987); 60 Am.Jur.2d *Penal Corrections and Correctional Institutions* § 106, at 1197 (1987).

The majority cannot have it both ways. Either an adequate predeprivation hearing has been provided by the system heretofore in place, or it was not. If, as I believe and as the prison authorities insist, an adequate predeprivation hearing is in place, Walters' contention should be rejected on that basis. If, as the majority holds, the statute provides only a post-deprivation hearing, Walters' con-

tention should be rejected because, under *Hudson,* it is adequate.

Prison officials are hard pressed to accord prisoners due process rights to which they are entitled. The challenged system here strikes me as eminently reasonable and adequate. I would reverse.