**Darryl BUCK, Petitioner,**

v.

**Jeffrey A. BEARD, Secretary Pennsylvania Department of Corrections, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2003.

Decided Oct. 24, 2003.

---

Ernest D. Preate, Jr., Scranton, for petitioner.

Michael A. Farnan, Camp Hill, for respondents.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before the Court is the preliminary objection of the Pennsylvania Department of Corrections and Secretary Jeffrey A. Beard (collectively, Department) to the complaint in mandamus [1] (petition) filed by Darryl Buck (Buck) requesting an injunction ordering the Department to cease and desist deducting funds from his inmate account for court costs, fines and restitution.

Buck is an inmate currently residing at the State Correctional Institution at Dallas (SCI–Dallas) serving a three to six-year sentence imposed by the Court of Common Pleas of Delaware County (sentencing court) on February 16, 2001. In addition to imprisonment, the sentencing court also ordered Buck to pay fines, costs and restitution in the amount of $10,000. On October 21, 2002, the Department began deducting from Buck's inmate account 20 percent of the funds. Buck filed an inmate request/grievance with the Department challenging the deduction. The Department informed Buck that deductions were being made pursuant to Section 9728(b)(5) of the Sentencing Code, 42 Pa.C.S. § 9728(b)(5),[2] commonly referred to as Act

---

1. On December 20, 2002, this Court allowed Buck to proceed *in forma pauperis* and ordered that Buck's complaint in mandamus be treated as a petition for review addressed to our original jurisdiction pursuant to 42 Pa. C.S. § 761 and Pa. R.A.P. 1502.

2. That section provides:
 **(b) Procedure.-**
 (5) The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from the inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation. Any amount deducted shall be transmitted by the Department of Corrections or the county correctional facility to the probation department of the county or other agent designated by the county commissioners of the county

84,[3] and applied towards the payment of his $10,000 fine.

On December 16, 2002, Buck filed a petition with this Court alleging that the Department had violated his rights protected by the *ex post facto* clause[4] and that the Department did not have the authority to determine the amount of funds deducted from his account without a hearing. Buck requested injunctive relief, a hearing to determine his financial ability to pay, and the remittance of any and all funds that had been deducted for court costs, fines and restitution. The Department has now filed a preliminary objection in the nature of a demurrer to the petition, alleging that the sentencing court's commitment order, which specified the fines, costs and restitution, was sufficient to support the deductions and, therefore, that Buck failed to state a cause of action for which relief could be granted.[5]

In its preliminary objection, the Department contends that Buck is not entitled to an injunction because Section 9728(b)(5) specifically authorizes it to determine the percentage of funds deducted from his account and to deduct such amount without a hearing. First, this Court has reasoned that an inmate's reme-

dy from the deduction of funds from his inmate account is at law, i.e., challenging the sentencing court's order imposing the costs, fines and restitution, and not by seeking an injunction against the Department. *Harding v. Superintendent Stickman of SCI Greene*, 823 A.2d 1110 (Pa. Cmwlth.2003) (inmate may not challenge substance of sentencing court's order by seeking an injunction against the Department); *George v. Beard*, 824 A.2d 393 (Pa. Cmwlth.2003) (it is the judgment of the sentencing court which enables the Department to deduct funds; thus, an inmate may not challenge that judgment by seeking to enjoin the Department from carrying out its statutorily mandated duty to deduct funds). Second, it is well established that Section 9728(b)(5) authorizes the Department to make monetary deductions from an inmate's account to pay court ordered costs, fines and restitution, and does not impose prior court authorization, i.e., a hearing, as a threshold condition. *Boyd v. Department of Corrections*, 831 A.2d 779 (Pa.Cmwlth.2003); *Harding; George; Commonwealth v. Fleming*, 804 A.2d 669 (Pa.Super.2002); *Sweeney v. Lotz*, 787 A.2d 449 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 572 Pa. 717, 813 A.2d 848 (2002).[6] In addition,

with the approval of the president judge of the county in which the offender was convicted. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

3. Section 4 of Act 84 was enacted on June 18, 1998, and became effective on October 18, 1998. It amended Section 9728 of the Sentencing Code, 42 Pa.C.S. § 9728, by adding subsection (b)(5).

4. Article I, § 10 of the U.S. Constitution forbids the passage of any law which imposes any punishment for an act not punishable at the time it was committed or which imposes additional punishment to that then prescribed. *See Weaver v. Department of Corrections*, 720 A.2d 178 (Pa.Cmwlth.1998).

5. In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Marrero by Tabales v. Commonwealth of Pennsylvania*, 709 A.2d 956 (Pa.Cmwlth. 1998), *affirmed*, 559 Pa. 14, 739 A.2d 110 (1999). In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

6. Judge Friedman, in her dissent, asserts that the majority does not address the issue of whether the Department has violated Buck's due process rights by making deductions from his inmate account without a hearing. How-

Section 9728(b)(5) specifically authorized the Department to develop guidelines for the deduction of funds, presumably because it was in the best position to evaluate an inmate's financial ability to pay.[7]

Buck contends, however, that those decisions were wrongly decided because under Section 9730(b) of the Sentencing Code, 42 Pa.C.S. § 9730(b), only the trial court can impose installment payments.[8] That provision provides, in relevant part:

**(b) Procedures regarding default.-**

1) If a defendant defaults in the payment of a fine, court costs or restitution after imposition of sentence, the issuing authority or a senior judge or senior district justice appointed by the president judge for the purposes of this section may conduct a hearing to determine whether the defendant is financially able to pay.

\* \* \*

(3) If the issuing authority, senior judge or senior district justice determines that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the issuing authority, senior judge or senior district justice may provide for payment in installments. In determining the appropriate installments, the issuing authority, senior judge or senior district justice shall consider the defendant's financial resources, the defendant's ability to make restitution and reparations and the nature of the burden the payment will impose on the defendant.

---

ever, because all of the above-cited cases find that Section 9728(b)(5) authorizes the Department to make monetary deductions from an inmate's account for court-ordered obligations without first providing a "financial ability to pay hearing," we did not feel the need to expound on that issue. We note that "garnishment" by the government without a hearing **at all** to collect an obligation is not uncommon. Section 19 of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6919, authorizes a tax collector to garnish 10% of the wages of a taxpayer who owes delinquent per capita, occupation, occupational privilege and earned income taxes. *See also* 72 P.S. § 5511.20.

7. It was in response to that directive that the Department developed Policy DC–ADM 005, which provides, in relevant part, "the business office will deduct from an inmate's account monthly payments of 20% of the preceding month's income provided the account balance exceeds $10.00." *Boyd*, 831 A.2d at 783.

8. Buck contends that we should adopt the reasoning in our decision in *Boofer v. Lotz*, 797 A.2d 1047 (Pa.Cmwlth.2002), *petition for allowance of appeal granted, in part*, 572 Pa. 567, 817 A.2d 1079 (2003). In *Boofer*, however, the inmate filed a writ of habeas corpus challenging deductions from his inmate account initiated by the Butler County Clerk of Courts as opposed to the situation in the case before us, where Buck requested an injunction against the Department from deducting funds pursuant to the February 16, 2001 commitment order. Because the deductions in *Boofer* were not based on the transmission of a court order assessing fines, costs or restitution, we held that the Clerk of Courts had no legal basis under Section 9728(b) of Act 84 to deduct funds. Moreover, in *Harding*, this Court expressly stated that *Boofer* was not applicable to cases where an inmate attempts to enjoin the Department from deducting funds from his inmate account on the ground that he is first entitled to a hearing to determine his financial ability to make payments. In that case, we held that because the Department is statutorily mandated under Section 9728(b)(5) to garnish an inmate's account, the inmate's remedy is at law, i.e., appealing the trial court's order imposing the costs, fines and/or restitution and not an injunction against the Department. In this case, Buck does not dispute that the sentencing court imposed fines, costs and restitution upon him, but instead, only argues that the Department may not deduct funds for such purposes without a court order authorizing the deduction.

42 Pa.C.S. § 9730(b). What that argument ignores is that the authorization contained in Section 9728(b)(5) of the Sentencing Code permits the Department to deduct funds only from an inmate account and not from any other assets that the prisoner may have. By granting this supplementary power to the Department to collect court-ordered financial obligations from inmate accounts, the General Assembly recognized that the deducted amounts involved were relatively minor, and that it was impractical and burdensome for trial courts to conduct a "financial ability-to-pay hearing" anytime the funds in the inmate account fluctuated.

 Even if the Department has the power to make the deduction, Buck alleges that the 20 percent deduction has created a financial hardship on him; however, he fails to allege what he cannot afford as a

result of the Department's deductions. Taking into consideration that an inmate receives room, clothing and board, a general allegation that he cannot afford to have 20 percent of his funds deducted is not a sufficient allegation to establish any harm. *See Sweeney; Harvey v. Department of Corrections,* 823 A.2d 1106 (Pa. Cmwlth.2003) (recognizing that non-incarcerated debtors have to provide for life's necessities, i.e., food, clothing and shelter, whereas inmates have those necessities provided for them by the Commonwealth).[9]

 In the alternative, Buck contends that the Department's use of Act 84 to deduct funds is a violation of the *ex post facto* clause of the United States Constitution. However, because Act 84 was enacted on June 18, 1998, *see Commonwealth v. Baker,* 782 A.2d 584 (Pa.Super.2001), and

**9.** Both Judge Friedman, in her dissenting opinion, and Judge Smith–Ribner, in her concurring and dissenting opinion, address and find it improper to make the 20% deduction from gifts deposited in an inmate's account. Judge Smith–Ribner correctly notes that the majority does not discuss this issue and that this issue was not addressed by Buck in his counseled brief. Nonetheless, Judge–Smith Ribner goes on to address this issue because she believes that it is properly before us (as apparently so does Judge Friedman) because Buck averred in his complaint that the 20% deduction was made from monetary gifts that he received. (Paragraph 3). (Judge Smith–Ribner's opinion mentions that Department's counsel stated at oral argument that a deduction would be made but that was only in response to a question from the bench). However, in the "Stated Claim" portion of his complaint, Buck only challenges, just as his brief does, the authority of the Department to withdraw funds from the inmate's account. Specifically, paragraphs 12 and 13 of the complaint, the only paragraphs in the "Stated Claim" section of the complaint, provide that:

12. To the extent that Respondents "does not have any independent authority to determine the amount of the installment" nor has the Respondents sought the mandatory trial court action to determine Petitioner's

ability to pay court cost. The Respondents has denied the Petitioner due process of law, and continues to do so in violation of the 14th Amendment of both State and Federal Constitutions. *Boofer v. Lotz,* 797 A.2d 1047.

13. The application of 42 Pa.C.S.A. § 9728 (Act 84) to cases and events occurring before its enactment violate the ex post facto clause of both state and federal constitutions.

Also, in the remedy portion of his complaint, Buck makes it clear that he is only challenging the general authority to make the deduction and makes no separate request for relief. Because it was not raised, we cannot now reach that issue.

In addition, Judge Friedman, in her dissent, goes on to argue that the majority opinion fails to address whether the Department has "violated the separation of powers doctrine by usurping the sentencing court's power to determine a defendant's ability to pay fines, costs and restitution." However, this issue also was not raised in Buck's complaint or argued in his brief, and it, too, was brought in response to a question by a court member. Because it was never raised by Buck, the person before us, we will not address it. *But see Payne v. Commonwealth Department of Corrections,* 813 A.2d 918 (Pa.Cmwlth.2002).

the trial court did not sentence Buck until February 16, 2001, the Department did not violate the *ex post facto* clause by deducting funds from his inmate account. *See also Sweatt v. Department of Corrections,* 769 A.2d 574 (Pa.Cmwlth.2001) (holding that Act 84 is not penal in nature and, therefore, does not violate the *ex post facto* clause).

Accordingly, because Buck has failed to state a claim upon which relief could be granted, the Department's preliminary objection is sustained and Buck's petition is dismissed.

### ORDER

AND NOW, this *24th* day of *October,* 2003, the Department of Corrections' Preliminary Objection is sustained and Darryl Buck's Petition for Review is dismissed.

## CONCURRING AND DISSENTING OPINION BY Judge SMITH–RIBNER.

I concur in part with the Majority's decision to sustain Respondents' preliminary objection in the nature of a demurrer to Petitioner Darryl Buck's complaint in mandamus, treated as a petition for review addressed to the Court's original jurisdiction. I concur with prior decisions of the Court which hold that the Department has statutory authority to make deductions from inmate accounts to apply toward restitution and court cost orders entered against the inmate. I dissent, however, from the Majority's dismissal of Petitioner's complaint as it relates to the Department's authority to make deductions from monetary gifts or other outside sources credited to an inmate's prison account, and I would overrule Respondents' preliminary objection in that regard.

The Majority did not discuss the issue regarding deductions from gifts to inmates or funds from other outside sources, presumably because Petitioner's brief argues

in general the authority of the Department to make any deductions at all from inmate accounts without prior notice and hearing. Petitioner, nevertheless, averred in his pro se complaint that the Department made deductions from his inmate account without statutory authority, and he specifically averred that 20 percent deductions were being made on a monthly basis from his wages and monetary gifts from his family members. Petitioner claimed that he has been denied due process of law by virtue of the deductions from his account. Consequently, this issue is squarely before the Court in this case.

I note that the standards for reviewing preliminary objections are well settled. The Court shall sustain preliminary objections and dismiss a complaint only when it is clear and free from doubt that the law will permit no recovery. *Sweatt v. Department of Corrections,* 769 A.2d 574 (Pa. Cmwlth.2001); *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance,* 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992). When ruling on preliminary objections, the Court must accept as true all well-pleaded material allegations of the complaint and must accept all inferences reasonably deducible from those allegations. *Id.* A demurrer should not be sustained unless on the face of the complaint it is certain that the law will permit no recovery, and all doubts should be resolved against dismissal. *Id.*

I believe that the Majority erred in dismissing Petitioner's complaint as it pertains to the deductions from gifts and other outside sources inasmuch as nothing in the Act of June 18, 1998, P.L. 640 (Act 84), in Section 9728(b)(5) of the Sentencing Code, 42 Pa.C.S. § 9728(b)(5), or in Pennsylvania case law supports the argument that the Department is statutorily authorized to make such deductions from an inmate's private personal property without

prior notice and hearing. The Majority cited a recent decision in *Boyd v. Department of Corrections,* 831 A.2d 779 (Pa. Cmwlth.2003), which quoted the Department's Policy DC–ADM 005 (Part VI(C)(4)(a)) pertaining to deductions from inmate accounts and providing in relevant part: "[T]he business office [of the Department] will deduct from an inmate's account monthly payments of 20% of the preceding months *income* provided the account balance exceeds $10.00." *Boyd,* 831 A.2d at 783 (emphasis added).

At argument in this case before the Court en banc, counsel for Respondents indicated that the policy contemplated deductions from an inmate's "income," *i.e.,* earnings from work performed by inmates at their respective places of confinement. In this regard, I note that Act 84 amended Section 8127(a) of the Judicial Code, *as amended,* 42 Pa.C.S. § 8127(a), by adding paragraph (5), which now provides that an individual's wages, salaries and commissions are exempt from attachment, execution or other process except upon an action or proceeding "[f]or restitution to crime victims, costs, fines or bail judgments pursuant to an order entered by a court in a criminal proceeding." Significantly, Section 8127 is entitled "personal earnings exempt from process." The Department's policy, however, purports to define income as funds credited to an inmate's account regardless of the source, but that definition is not authorized by Act 84 or, specifically, by the foregoing amendment. Accordingly, as gifts and other outside sources credited to an inmate's account are not "personal earnings" contemplated by Act 84, but instead represent private personal property, they cannot be taken away without due process of law. *See Reynolds v. Wagner,* 128 F.3d 166 (3d Cir.1997); *Holloway v. Lehman,* 671 A.2d 1179 (Pa. Cmwlth.1996); *T.L.C. Services, Inc. v. Ka-*

*min,* 162 Pa.Cmwlth. 547, 639 A.2d 926 (1994).

Although the precise issue regarding deductions from inmate gifts or other outside sources has not been decided by Pennsylvania courts, that issue was presented in *Walters v. Grossheim,* 525 N.W.2d 830 (Iowa 1994), and was decided by the Supreme Court of Iowa. The Supreme Court considered a prison inmate's challenge to the state department of corrections' policy authorizing automatic deductions for victim restitution of 20 percent of all sources of funds credited to an inmate's account, including funds from family members or other outside sources. The court affirmed the lower court's decision that the inmate's rights to procedural due process were violated and that he was entitled to a hearing before deductions were made from gifts or other outside sources other than the earnings received by the inmate for his institutional labor in the prison laundry. The inmate received regular cash gifts from his father, which were used to purchase the inmate's personal sundries and law books. The court noted the department's acquiescence with the principle that an inmate's money in prison accounts is protected property under the Constitution, but it nevertheless argued that the statute authorizing the deductions provided the required due process protections under the circumstances.

The Supreme Court concluded in *Walters* that a department policy that took an inmate's private resources could not be implemented without granting the inmate an opportunity to protect his private personal property interests from unreasonable deprivation, stressing that the government's interest in promoting the payment of restitution orders may indeed outweigh the inmate's interest in applying the funds in his account to some other end. That decision, however, could not be unilaterally

made by the institution consistent with due process requirements, and the inmate therefore was entitled to a hearing on any objections that he might have to the deprivation of his property. The court disagreed that a hearing was required before each withdrawal, but it held that to comport with due process requirements prison officials must notify inmates of the proposed amendment to their restitution plans, including the assessment against outside sources, allow time for inmates to object and consider the objections in formulating an individual plan for the future. The court was satisfied that to comport with due process, the pre-deprivation hearing need not be any more than an informal, non-adversarial review of the inmate's objections to the proposed withdrawal of the inmate's funds, citing *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The critical ruling, however, was that before funds could be deducted from gifts from family members or other sources representing private personal property, due process required that before 20 percent of such funds may be deducted the inmate must be given notice and, at a minimum, an informal hearing and an opportunity to object.

I find additional support for this dissent in *Higgins v. Beyer,* 293 F.3d 683 (3d Cir.2002), a case in which the Third Circuit Court of Appeals reviewed a New Jersey statute providing for the deduction of funds from inmate accounts for victim restitution purposes. The New Jersey department of corrections is statutorily authorized to collect the assessment during an inmate's incarceration when ordered by the court and to forward the collected funds to the Victims of Crime Compensation Board. The inmate was ordered to pay a $1,000 fine to the board, and several years later he received a $7,608 check from the United States Treasury representing seven years of Vet-

erans Administration (VA) benefits for the inmate's partial disability. The department's employees sought to take a portion of the funds to pay the outstanding fine, and the inmate filed a pro se complaint challenging the authority of the department to make the deduction.

The Third Circuit indicated in *Higgins* that under federal law the inmate's benefits were protected from attachment, levy or seizure by the department of corrections. Ultimately, the court invalidated the New Jersey statute allowing the deductions as it conflicted with congressional purposes in enacting the law that prohibited attachment, levy or seizure of VA benefits, which represented private personal property of the inmate and could not be taken away without notice and a hearing to comport with due process rights under the Fourteenth Amendment. Because the inmate averred sufficient facts to establish his entitlement to predeprivation notice and hearing, the Third Circuit vacated the district court's decision and remanded the case for further proceedings.

Since under the facts averred in this case the Court cannot state with certainty that Buck is not entitled to relief pertaining to deductions from gifts or other outside sources credited to his prison account, I would overrule Respondents' demurrer as to this issue and require Respondents to file an appropriate response. The significance of this issue and the need for due process protections under these circumstances would not be understated were the Court to appropriately consider that restitution plans should reflect the inmate's ability to pay, that inmates are required to pay for sundry items and potentially other obligations during their incarceration and that their institutional earnings are minimal for the services that they perform.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. First, I disagree with the majority that section 9728(b)(5) of the Sentencing Code [1] authorizes the Department of Corrections (Department) to determine an inmate's ability to pay court-ordered fines, costs or restitution. Second, I disagree with the majority that section 9730(b) of the Sentencing Code [2] does not apply to inmates. Third, I must dissent because the majority has ignored the law governing preliminary objections by failing to accept as true, and by failing to address, Buck's allegation that the Department has deducted 20% from the monetary gifts he has received from his family.

## I. Section 9728(b)(5)

### A. Guidelines

The majority concludes that section 9728(b)(5) of the Sentencing Code authorizes the Department to determine an inmate's ability to pay court-ordered obligations without a hearing "presumably" because the Department is in the best position to evaluate an inmate's ability to pay.[3] (Majority op. at 3–4.) I cannot agree.

Section 9728(b)(5) of the Sentencing Code authorizes the Department to "develop *guidelines* relating to" the Department's responsibility for making "monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation." 42 Pa.C.S. § 9728(b)(5) (emphasis added).

"Guidelines are ... accurately defined as policy and procedures and are promulgated to give guidance and direction ... to inmates and staff." *Chimenti v. Pennsylvania Department of Corrections*, 720 A.2d 205, 210 (Pa.Cmwlth.1998), *aff'd*, 559 Pa. 379, 740 A.2d 1139 (1999). Guidelines leave staff "free to exercise discretion to follow or not follow the announced policy in an individual case"; if guidelines do *not* leave staff with such discretion, then the guidelines are, in reality, regulations which must be promulgated under the Commonwealth Documents Law.[4] *Id.* Finally, "guidelines [relating to sentencing] cannot ... alter the legal rights and duties of the defendant ... and the sentencing court." *Commonwealth v. Sessoms*, 516 Pa. 365, 376, 532 A.2d 775, 780–81 (1987).

Because section 9728(b)(5) only authorizes the Department to develop guidelines, section 9728(b)(5) must be interpreted to mean that the Department's staff is free to exercise discretion to make *or not make* monetary deductions from inmate personal accounts in an individual case.[5] Moreover, section 9728(b)(5) must be interpreted to mean that the Department may not alter the legal rights of inmates or the duties of a sentencing court.

In this case, Buck's complaint states a cause of action because it alleges that: (1)

---

1. 42 Pa.C.S. § 9728(b)(5).

2. 42 Pa.C.S. § 9730(b).

3. Absent a hearing, the Department would have no special knowledge about the financial obligations that an inmate might have outside of prison.

4. Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102–1602. I note that section 9728(b)(5) does *not* authorize the Department to promulgate regulations under the Com-

monwealth Documents Law; section 9728(b)(5) *only* authorizes the Department to develop guidelines, which do not have the force and effect of law.

5. Thus, in a particular case, an inmate could challenge the Department's deductions from his personal account as an abuse of discretion. Such a challenge would be filed against the Department in this court's original jurisdiction.

the Department improperly made deductions from his inmate account, i.e., the Department abused its discretion by making deductions; (2) the Department denied him due process in making deductions from his inmate account, i.e., the Department altered his legal rights; and (3) the Department usurped the power of the sentencing court to determine Buck's ability to pay in making deductions from his inmate account, i.e., the Department altered the duty of a sentencing court. Accordingly, I would overrule the Department's demurrer.

To the extent that Buck challenges the validity of the guidelines, I point out that **the Department's guidelines are not part of the record before this court.** Thus, I am unable to determine whether the Department's guidelines allow staff discretion to make *or not make* monetary deductions from inmate personal accounts. I also am unable to determine whether the Department's guidelines actually alter Buck's legal rights or the duties of a sentencing court.[6]

In fact, I am deeply troubled that the majority has upheld the Department's guidelines by sustaining the demurrer without any consideration of the law governing guidelines and without any examination of the guidelines themselves. A court should sustain a demurrer only in cases that are free and clear from doubt and only where it appears with certainty that the law permits no recovery under the allegations pleaded. *Sweatt v. Department of Corrections*, 769 A.2d 574 (2001). Absent the Department's guidelines, I cannot understand how the majority can conclude that this case is free and clear from doubt.

**B. Due Process**

Buck argues that the Department has violated his due process rights by making deductions from his inmate account.[7] Despite the fact that this issue is argued in Buck's brief and was discussed at oral argument, the majority does not address the matter. Unlike the majority, I would not dismiss Bucks' action without considering the arguments presented by court-appointed counsel.

"It is beyond dispute that money is property, and private property cannot be

---

**6.** The majority notes that, according to *Boyd v. Department of Corrections*, 831 A.2d 779 (Pa.Cmwlth.2003), the Department's guidelines provide for a monthly 20% deduction from the preceding month's income, provided that the account balance exceeds $10.00. (Majority op. at 699 n. 6.) The majority does not indicate whether the guidelines would apply to income earned by an inmate pursuant to a pre-release or work release plan.

If Buck had alleged that he earned income while on pre-release or work release and that the Department was making deductions from those earnings, the Department would be violating section 4 of the Act of July 16, 1968 (Work Release Act), P.L. 351, 61 P.S. § 1054. Section 4(a) of the Work Release Act states that the salaries or wages of inmates gainfully employed under a pre-release or work release plan shall be collected by the Department and shall *not* be subject to attachment for any purpose during the term of imprisonment.

*Id.* Section 4(b) of the Work Release Act states that the Department shall disburse the salaries or wages for the following purposes and in the following order: (1) the board of the inmate, including food and clothing; (2) necessary travel expense to and from work and other incidental expenses of the inmate; (3) support of the inmate's dependents; (4) payment, either in full or ratably, of the prisoner's obligations acknowledged by him in writing or which have been reduced to judgment; and (5) the balance to the prisoner upon his discharge. 61 P.S. § 1054(b).

**7.** In ascertaining the intention of the General Assembly in enacting a statute, we presume that the General Assembly did not intend to violate the Pennsylvania or United States Constitutions. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3).

taken by the government without due process.... Reasonable notice and a hearing are required before appropriating funds from an inmate's account without his/her consent." [8] *Anderson v. Horn,* 723 A.2d 254, 256 (Pa.Cmwlth.1998) (citations omitted), *appeal denied,* 559 Pa. 669, 739 A.2d 167 (1999); *see Higgins v. Beyer,* 293 F.3d 683 (3d Cir.2002) (holding that the deduction of money from an inmate's personal account to pay a fine violates the Fourteenth Amendment if there is not notice and a hearing). However, this court has held that the Department may deduct money from an inmate account to collect fines, costs and restitution **if the inmate was afforded due process at the time of sentencing.** *Russell v. Donnelly,* 827 A.2d 535 (Pa.Cmwlth.2003).

To the degree that *Russell* holds that a defendant with the ability to pay a fine at the time of sentencing will have the same ability to pay that fine at all times in the future, I disagree. In fact, in this case, we granted Buck *in forma pauperis* status, which means that Buck is *now* without financial resources even to pay the costs of this litigation. *See* Pa. R.C.P. No. 240(b). Moreover, the General Assembly made a special accommodation for the changing financial conditions of defendants when it enacted section 9730(b) of the Sentencing Code, which allows a court to re-examine a defendant's ability to pay *after* the imposition of a fine at sentencing.

Assuming *arguendo* that this court's decision in *Russell* is correct, one could reasonably infer from Buck's complaint that the sentencing court did *not* consider Buck's ability to pay when it imposed a $10,000 fine at sentencing.[9] Because *Russell* requires due process at sentencing and because it is not certain in this case that Buck was afforded due process at sentencing, I would conclude that Buck has stated a violation of his due process rights.

### B. Separation of Powers

Buck also argues that the Department has violated the separation of powers doctrine by usurping the sentencing court's power to determine a defendant's ability to pay fines, costs and restitution. Although this argument was made to the court at oral argument, the majority does not address it. Unlike the majority, I would not dismiss Buck's action without considering the arguments that court-appointed counsel presented to this court.

The whole judicial power of the Commonwealth is vested in the courts, and the sentencing power is a well recognized facet of that judicial power.[10] *Young v. Commonwealth Board of Probation and Parole,* 487 Pa. 428, 409 A.2d 843 (1979). At sentencing, the court determines the amount of a fine, if any, and imposes costs based on the defendant's ability to pay.

---

**8.** "Obviously, the inmate grievance procedures ... do not meet the minimum standards [of due process]." *Holloway v. Lehman,* 671 A.2d 1179, 1182 (Pa.Cmwlth.1996).

**9.** In Paragraph 8 of the complaint, Buck alleges that he cannot afford the deductions from his inmate account. If the sentencing court properly determined that Buck had the ability to pay a $10,000 fine, then Buck should be able to afford the deductions.

**10.** In *Boyd,* this court stated that the authority to impose restitution at sentencing is statuto-

rily created and is not a function delegated exclusively to the courts under the Pennsylvania Constitution; therefore, such authority is not subject to the separation of powers doctrine. However, there was not a separation of powers issue in *Boyd;* thus, this statement is mere *dicta.* Moreover, it is incorrect. The *imposition* of a sentence is a judicial function. The legislative branch may establish a court's sentencing options, and the executive branch may oversee the service of a sentence, but the judicial branch *imposes* the sentence in a particular case.

Section 1726 of the Judicial Code, 42 Pa. C.S. § 1726; sections 9721(a)(5) and 9726 of the Sentencing Code, 42 Pa.C.S. §§ 9721(a)(5) and 9726. The court also determines the *method of payment* for the fines and costs. 42 Pa.C.S. §§ 1726 and 9726(d); Rule 706(C) of the Pennsylvania Rules of Criminal Procedure, Pa. R.Crim. P. 706(C).

Here, Buck alleges that the sentencing court ordered Buck to pay a fine of $10,000. (Petition, ¶ 6.) The court did *not* order Buck to pay the fine by installments. (R.R. at 1a); *see also* 42 Pa.C.S. § 9730(b)(3). Buck also alleges that the Department has been deducting 20% from his inmate account to pay the fine. Because the court did *not* order this method of payment, the Department has usurped the sentencing court's judicial power to determine the method of paying a particular fine imposed at sentencing. Thus, Buck has stated a cognizable separation of powers issue.

## II. Section 9730(b)

The majority concludes that section 9730(b) of the Sentencing Code does not apply to inmates. (*See* Majority op. at 700–01.) I cannot agree.

Section 9730(b) of the Sentencing Code states that, "if a *defendant* defaults in the payment of a fine, court costs or restitution after imposition of a sentence, the [court] may conduct a hearing to determine whether the defendant is financially able to pay." 42 Pa.C.S. § 9730(b) (emphasis added). This clear and unambiguous language indicates that section 9730(b) applies to *every* defendant, even defendants who happen to be inmates. When the words of a statute are clear and unambiguous, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

In holding otherwise, the majority has changed the word "defendant" in section 9730(b) to "defendant who is not an inmate." The majority justifies this re-writing of the statute by stating that the General Assembly recognized that the deducted amounts are relatively minor and that it is impractical and burdensome for courts to conduct an ability-to-pay hearing whenever an inmate's account fluctuates.[11] (Majority op. at 700.) However, this court may not consider the consequences of an interpretation or the legislative history of a statute unless the words of a statute are *not* explicit. Sections 1921(c)(6) & (c)(7) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(6) & (7). That is not the case here.

## III. Monetary Gifts

Buck alleges that the Department has been deducting 20% from the monetary gifts he receives from family members.[12] (Petition, ¶ 7.) Because we are ruling on a

---

11. Presumably, then, if a court concludes that an inmate is unable to immediately pay a fine, but the inmate later "wins the lottery," it would be too burdensome for a court to re-examine the inmate's ability to pay the fine.

12. A person may deposit money with the superintendent, warden, or other authorized individual for the benefit and use of an inmate, and it shall be credited to the inmate's account. Section 5123(b) of the Crimes Code, 18 Pa.C.S. § 5123(b). If a family member sends cash to an inmate through the mail, it will be deposited in the Inmate General Welfare Fund; if a family member sends an uncertified personal check through the mail, it will be returned. 37 Pa.Code § 93.2(c)(2). Approved family members may purchase items appearing on the Approved Master Commissary List for an inmate and have them sent directly to the inmate from an approved vendor. 37 Pa.Code § 93.4.

demurrer, we must accept this allegation as true. Despite the existence of the allegation in the complaint, the majority states that Buck does not challenge the Department's deductions from his family's gifts of money. (Majority op. at 700 n. 8.) However, in making such a statement, the majority ignores the rule of law governing preliminary objections in the nature of a demurrer.

There can be no dispute that Pennsylvania is a fact-pleading state. *Clark v. Southeastern Pennsylvania Transportation Authority*, 691 A.2d 988 (Pa.Cmwlth.), *appeal denied*, 550 Pa. 686, 704 A.2d 640 (1997). Thus, our supreme court has stated that a preliminary objection in the nature of a demurrer must be rejected if the *facts as pleaded* state a claim for which relief may be granted under *any theory of law*.[13] *Sunbeam Corporation v. Liberty Mutual Insurance Company*, 566 Pa. 494, 781 A.2d 1189 (2001). As indicated above, the facts as pleaded indicate that the Department is making deductions from monetary gifts that Buck has received from his family. If this is improper under *any* theory of law, then Buck's complaint has stated a claim for which relief may be granted. Indeed, in the remedy portion of his complaint, Buck asks for the return of the monies deducted from his inmate account, including whatever was deducted from his family's monetary gifts. (Petition, V(d).) Thus, unlike the majority, I choose to address this matter.

First, it *never* would be proper for the Department to make deductions from the monetary gift of a family member to collect an unpaid fine. When a sentencing court imposes a $10,000 fine, the court is required to consider the financial resources of the *defendant*. 42 Pa.C.S. § 9726(d). The court does *not* consider the financial resources of the defendant's family. When a court imposes a $10,000 fine, the amount is entered as a judgment against the *person sentenced*. 42 Pa.C.S. § 9728(b)(1) and (b)(4). It is *not* entered as a judgment against the family of the person sentenced. When a court must rule on a default in the payment of a fine, the court considers the financial resources of the *defendant*. 42 Pa.C.S. § 9730(b)(3). The court does *not* consider the financial resources of the defendant's family. Thus, unless an inmate has been deprived of a proper ability-to-pay hearing, the Department should be able to collect any fine without making deductions from family monetary gifts.

Second, when the legislature enacted Act 84 in 1998 to facilitate the collection of unpaid fines, the legislature amended both section 9728(b)(5) of the Sentencing Code *and* section 8127(a) of the Judicial Code.[14] While the amendment to section 9728(b)(5) permits monetary deductions from inmate accounts to collect unpaid fines, the amendment to section 8127(a) permits the attachment of wages to collect unpaid fines. The amendments are not unrelated; indeed, the legislature made clear by enacting Act 84 that section 9728(b)(5) and section 8127(a) are *in pari materia* and, thus, are to be construed as one statute.

---

13. If the facts as pleaded state a cause of action under any theory of law, we should overrule a demurrer and allow the party to amend the pleading pursuant to Pa. R.C.P. No. 1033. *See* Goodrich Amram 2d, § 1033:12. Indeed, Rule 1033 states that a court may allow a party to amend a pleading at any time, even though the amendment will give rise to a new cause of action. Because of Rule 1033, I do not agree with the majority's view that Buck has waived the monetary gift issue here. In fact, because of Rule 1033, I submit that when a court considers a preliminary objection in the nature of a demurrer, there is no such thing as a waiver of issues.

14. 42 Pa.C.S. § 8127(a).

Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932 (stating that statutes are *in pari materia* when they relate to the same things). Reading them as such, I conclude that the legislature intended section 9728(b)(5) to authorize monetary deductions *only* from an inmate's wages.[15]

For all of the foregoing reasons, I would overrule the demurrer.

---

**15.** In *Mays v. Fulcomer*, 122 Pa.Cmwlth. 555, 552 A.2d 750 (1989), this court held that the Department did not violate section 8127 of the Judicial Code by making deductions from an inmate's "wages" to collect restitution. At the time, section 8127 stated that personal wages are exempt from attachment. However, to reach its holding, this court concluded that an inmate's "wages" do not constitute personal wages for the purposes of section 8127. *Id.*

The holding in *Mays* is no longer relevant; indeed, the issue presented in that case has become a non-issue. By the enactment of Act 84 in 1998, the legislature amended section 8127 to allow the attachment of wages to collect restitution. Thus, since Act 84, there is no question that the Department can attach an inmate's "wages" to collect restitution. Although this court concluded in *Mays* that an inmate's "wages" do not constitute personal wages under section 8127, the legislature now has stated otherwise.